# WELLS *v*. ROPER, FIRST ASSISTANT POSTMASTER GENERAL OF THE UNITED STATES.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 103.   Argued January 2, 1918.—Decided March 18, 1918.

The First Assistant Postmaster General, in accordance with a decision of the Postmaster General, undertook to terminate an existing contract for automobile mail service at Washington, D. C., to make place for a similar service to be conducted by the Department under a special appropriation, his action being based upon the supposed authority of the contract itself and being purely official, discretionary, and within the scope of his duties. *Held*, that a suit to restrain. him from annulling the contract and from interfering with its further performance was in effect a suit against the United States, and was therefore properly dismissed.

44 App. D. C. 276, affirmed.

THE case is stated in the opinion.

*Mr. Daniel Thew Wright*, with whom *Mr. T. Morris Wampler* was on the briefs, for appellant.

*Mr. Assistant to the Attorney General Todd* for appellee.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was a suit in equity brought in the Supreme Court of the District of Columbia for an injunction to restrain Daniel C. Roper, First Assistant Postmaster General, from annulling a contract theretofore made between plaintiff and the Postmaster General acting for the United States, and from interfering between plaintiff and the United States in the proper performance and execution of the contract by plaintiff.   The Supreme Court sustained a

motion to dismiss the bill, its decree to that effect was affirmed by the Court of Appeals of the District of Columbia (44 App. D. C. 276), and plaintiff appeals to this court.

The contract was made February 14, 1913, and by it plaintiff agreed for a stated compensation to furnish, during a period of four years, a number of automobiles (with chauffeurs) specially equipped according to specifications, for use in collecting and delivering mail at Washington, D. C. One of its provisions (the third) was a stipulation that "any or all of the equipments contracted for herein may be discontinued at any time upon ninety days' notice from the said party of the first part"— meaning the Postmaster General.

Another was: "18. That all acts done by the First Assistant Postmaster General in respect of this contract shall be deemed and taken, for all purposes, to be the acts of the Postmaster General, within the meaning and intent of this contract."

Plaintiff expended considerable sums of money and incurred substantial obligations in providing automobiles and other special equipment necessary for the performance of the contract, and continued to perform it for nearly two years. Then the Postmaster General, acting under a provision of an appropriation act approved March 9, 1914, c. 33, 38 Stat. 295, 300, by which he was authorized in his discretion to use such portion of a certain appropriation as might be necessary "for the purchase and maintenance of wagons or automobiles for and the operation of an experimental combined screen wagon and city collection and delivery service," determined it to be in the interest of the public service that such an experiment should be conducted at Washington, D. C., and in order to do this deemed it necessary to discontinue the service then being performed by plaintiff. Accordingly the First Assistant Postmaster General notified plaintiff in writing that it was essential for the purpose mentioned that his

contract should be canceled, and that "under the third stipulation of the contract the use of all of the automobiles furnished thereunder will be discontinued at the close of business January 31, 1915, and the contract canceled eff active on that date." Notwithstanding protest by plaintiff, this decision was adhered to, and the present suit was commenced.

Both courts held it to be essentially and substantially a suit against the United States and therefore beyond the jurisdiction of the court, and in this view we concur. The effect of the injunction asked for would have been to oblige the United States to accept continued performance of plaintiff's contract and thus prevent the inauguration of the experimental service contemplated by the Act of 1914—a direct interference with one of the processes of government. The argument to the contrary assumes to treat defendant not as an official but as an individual who although happening to hold public office was threatening to perpetrate an unlawful act outside of its functions. But the averments of the bill make it clear that defendant was without personal interest and was acting solely in his official capacity and within the scope of his duties. Indeed, it was only because of his official authority that plaintiff's interests were at all endangered by what he proposed to do.

That the interests of the Government are so directly involved as to make the United States a necessary party and therefore to be considered as in effect a party, although not named in the bill, is entirely plain. And the case does not fall within any of the exceptions to the general rule that the United States may not be sued without its consent, nor its executive agents subjected to the control of the courts respecting the performance of their official duties. It cannot successfully be contended that any question of defendant's official authority is involved; it is a mere question of action alleged to be inconsistent

with the stipulation under which it purported to be taken; nor can it be denied that the duty of the Postmaster General, and of the defendant as his deputy, was executive in character, not ministerial, and required an exercise of official discretion. And neither the question of official authority nor that of official discretion is affected, for present purposes, by assuming or conceding, for the purposes of the argument, that the proposed action may have been unwarranted by the terms of the contract and such as to constitute an actionable breach of that contract by the United States. See *Noble* v. *Union River Logging Railroad*, 147 U. S. 165, 171, and cases cited; *Belknap* v. *Schild*, 161 U. S. 10, 17, 18; *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94, 108; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 620.

The United States has consented to be sued in the Court of Claims and in the District Courts upon claims of a certain class, and not otherwise. Hence, without considering other questions discussed by the courts below or raised by appellant in this court, we conclude that the dismissal of the bill was not erroneous.

*Decree affirm*