SARATOGA STATE WATERS CORPORATION, Respondent, *v.* GEORGE D. PRATT, Appellant.

Third Department, September 26, 1918.

Conservation Law — validity of lease of rights in State Reservation at Saratoga Springs — effect of subsequent enactment of Conservation Act — contract — refusal to perform — liability of Conservation Commissioner for violation of lease — injunctive relief — adequate remedy at law — constitutional law — public official not restrained from doing act required by statute — specific performance.

An agreement in the name of the State by the Board of Commissioners of the State Reservation at Saratoga Springs, giving the plaintiff's assignor the right for a term of years with privilege of renewals to bottle and sell waters from certain springs and to use the real and personal property of the reservation, subject, however, to all statutes theretofore enacted, and providing that it shall be binding only so far as the Commissioners had power to make it, is valid.

The amendment of the Conservation Law (Laws of 1917, chap. 204), which treated the agreement as at an end and the bottling business as that of the State, made the State responsible, after it became a law, for a violation of the contract.

In view of said statute, the court could not grant the plaintiff injunctive relief as against the Conservation Commissioner. He should not be restrained from doing an act which the statute requires him to do.

Ordinarily, either party to a contract may refuse to perform it, but must respond in damages to the party aggrieved thereby.

The fact that damages will not fairly compensate for the breach of a contract, or the prevention of a multiplicity of suits, and other reasons, may justify a specific performance, but it is not awarded unless the remedy is mutual.

A public official who disregards his duties to the prejudice of another may be compelled to perform his legal duties by order of the court. But if a statute of the State requires him to do the acts, he cannot be restrained on the plea that such action on his part will prejudice another in his contract rights with the State.

A legislative act which prevents the performance by the State of its contract relating to the conduct of a State reservation is not an unconstitutional interference with the property rights of the other party, so long as the State provides a tribunal in which damages may be recovered against it.

If in such cases the acts of a State official are prejudicial to another, and in violation of property rights, the State is causing the wrong and proper action may be had in the Court of Claims for damages.

The aforesaid provision of the Conservation Act is so far valid, at least, that a court of equity will not require the Conservation Commissioner to violate its terms, especially in a case where there is a reasonably adequate remedy at law.

The court should not interfere with or hamper the administration of the reservation property at the instance of the plaintiff, which is not taking advantage of its legal remedies.

COCHRANE and H. T. KELLOGG, JJ., dissented.

APPEAL by the defendant, George D. Pratt, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 5th day of April, 1918, upon the decision of the court after a trial at the Saratoga Special Term.

*Adelbert F. Jenks* [*B. H. Loucks* and *B. F. Sturgis* of counsel], for the appellant.

*Henry W. Williams* [*Edgar T. Brackett* of counsel], for the respondent.

JOHN M. KELLOGG, P. J.:

In considering the agreement in question, it is not necessary to give a name to it, or to the rights acquired thereunder. In substance, it contemplated that for the term of five years (with the privilege of four renewals for a like term) plaintiff's assignors should bottle and sell the waters from certain springs on the State Reservation at Saratoga Springs and use, for that purpose, the real and personal property of the

Reservation (used in bottling and selling waters) and such other real estate not required by the Commissioners, as may be necessary to carry on said business. They were to provide for the free drinking by the public of the waters at the source at the springs where such provision then existed. The rights were not to interfere with the bathing rights to be exercised by the Commissioners; the use of the property and rights were to be at all times subject to the reasonable regulation of the Commissioners. It was also contemplated that they should form a corporation to which the contract should be assigned, and the plaintiff is such assignee.

The agreement was made March 6, 1916, in the name of the State, by the Board of Commissioners of the State Reservation at Saratoga Springs, and the plaintiff's assignors. The term was to begin April twenty-fifth following the agreement. On the nineteenth of April the Commissioners were legislated out of office and the care, custody and control of the Reservation was placed in the Conservation Commission. On the twenty-first day of April the Conservation Commission, the defendant being sole Commissioner, gave notice of the termination of the agreement and the refusal of the State to perform it. This action to compel the defendant to turn over the springs to the plaintiff was begun June 13, 1916, and was decided July 6, 1917. The judgment appealed from determines that the agreement is valid, and restrains the defendant, his agents and servants, from interfering with the exercise by the plaintiff of the rights accorded thereby, and defendant is ordered to deliver possession of the property to the plaintiff, and he, his agents and servants, are restrained from not delivering possession and from remaining on or in possession of the property as against the plaintiff, and from interfering with its taking possession and entering upon the property and from bottling and selling the waters, subject, however, to the right of the defendant of inspecting said leased property and taking the water for bathing purposes.

The appellant contends that the Commissioners, in several respects, exceeded their authority, and assumed to grant rights beyond their powers, and that the agreement is, therefore, unenforcible; that the action is virtually against the State and cannot be maintained and that no sufficient ground for

equitable relief is shown. Undoubtedly, in certain respects, the Commissioners in the agreement exceeded their authority, and, aside from the saving clause in the agreement, it could not be enforced. The agreement, in substance, provides that it is subject to all statutes theretofore enacted and that such enactments enter into and become a part of it with like effect as if set forth therein, and that it shall be binding only so far as the Commissioners had power to make it, and that any provision in excess of the authority of the Commissioners shall be disregarded. These provisions, which we have called the saving clause, make it unnecessary to consider the particular respects in which the Commissioners otherwise were exceeding their authority. The real agreement is gathered from harmonizing its language with the statutes and subordinating its terms to the spirit of the statutory law. We conclude, therefore, that while in certain respects and in certain contingencies which may arise, it might be difficult to say with certainty just what the agreement actually means, and while litigation would naturally result in harmonizing it with the statutes and determining its true meaning, that nevertheless, properly interpreted, it is valid. It is evident, however, that there would be great difficulty in enforcing the agreement for a long series of years by order of the court. It contemplates that the State shall furnish new machinery, and replace machinery from time to time, as it becomes useless or wears out. Other acts are to be done by the State. It provides that where an appropriation by the Legislature is necessary to meet expenditures on the part of the State, it shall be valid only to the extent of such appropriation, and then provides that if the Commissioners are without funds to meet any of the expenses required, the other party to the contract may make the expenditures in behalf of the State and take the amount so expended from rentals due or to become due. The court would have great difficulty in enforcing this agreement, or in permitting such expenditures to be made at the expense of the State. If such expenditures were not required or permitted, and the plaintiff was ready to perform its contract, it might well happen that the business would cease and the public be deprived of the benefit of the waters. There may be a never-ending controversy in harmon-

izing the terms of the agreement as written with the spirit of the statutes.

It is urged that equity, and the restraining power of the court, furnish the only relief of real value to the plaintiff; that the defendant had not the right to terminate this contract in behalf of the State and make the State liable for his act and that his individual wrongdoing alone stands between plaintiff and the enjoyment of the contract.

We need not determine whether prior to the amendment of the Conservation Law in 1917,* about to be referred to, the defendant, by his act, could make the State liable for a breach of the contract, for as we view it that statute made the State at least responsible for a violation of the contract thereafter. It is immaterial to this discussion whether the defendant is personally responsible for his acts prior thereto, or whether the State is liable. Chapter 204 of the Laws of 1917 became a law April 17, 1917, to take effect July 1, 1917. At the time it was passed the defendant, as Conservation Commissioner, had been for about a year bottling and selling the waters of the State in direct violation of the terms of the agreement under which the plaintiff claims. The facts must have been known to the Legislature and the act must have been passed with reference to the situation then existing, and evidently referred to the springs and business as then carried on. It, in substance, created a capital fund, with an initial appropriation of $260,000, which it placed in the hands of the Commission for carrying on the business of the Reservation and conducting the bath houses on the Reservation and the drink hall, and maintaining and conducting the bottling plant, and provided that the Commission " shall itself bottle, sell and market the excess water and gases of said Reservation," giving it power to lease any lands and buildings on the Reservation not needed for its uses. The above provisions, and the general tenor of the statute, are entirely inconsistent with the idea that the plaintiff was bottling and selling the water, or had the right

---

* See Conservation Law (Consol. Laws, chap. 65; Laws of 1911, chap. 647), § 603, added by Laws of 1916, chap. 295, as amd. by Laws of 1917, chap. 204; Id. §§ 605, 606, as added by Laws of 1917, chap. 204.— [REP.

so to do. This legislation treated the lease as at an end and the bottling business as the business of the State. The acts of the defendant thereafter cannot be treated as an individual wrongdoing upon his part and a violation of his official duty, but were the acts of the State itself. The effect, therefore, of the judgment under review is to restrain the State from carrying on the business which it was carrying on, and to enjoin the performance of acts which the statute then in force required. In view of the statute, in our judgment, the court should not have granted the injunctive relief contained in the judgment. The Conservation Commissioner should not be restrained from doing an act which the statute requires him to do. (*Wells* v. *Roper*, 246 U. S. 335.)

Ordinarily either party to a contract may refuse to perform it, but must respond in damages to the party aggrieved thereby. There are some exceptional cases where a court of equity, by injunctive judgment, may require a contract to be specifically performed. The fact that damages will not fairly compensate for the breach of a contract, or the prevention of a multiplicity of suits, and some other reasons, may justify a specific performance. It is not awarded unless the remedy is mutual. (*Wadick* v. *Mace*, 191 N. Y. 1.) The agreement is executory on the part of the plaintiff and partly executory on the part of the State. It is evident in this case that if the plaintiff refused to enter upon the Reservation and bottle and sell the water, a specific performance could not be granted. The defendant acted in good faith, in the belief that the contract was illegal and detrimental to the public interests; the Legislature evidently acted with the same understanding.

A public official who disregards his duties, to the prejudice of another, may be compelled to perform his legal duties by order of the court. But if a statute of the State requires him to do the acts, he cannot be restrained on the plea that such action on his part will prejudice another in his contract rights with the State. The State has established a tribunal which awards damages against it for its wrongs and the violation of its contracts. A legislative act which prevents the performance by the State of its contract relating to the conduct of a State reservation is not an unconstitutional interference with the property rights of the other party so long

as the State provides a tribunal in which damages may be recovered against it. If in such cases the acts of a State official are prejudicial to another and in violation of property rights, the State is causing the wrong, and proper action may be had in the Court of Claims for damages. The statute is so far valid at least that a court of equity will not require the officer to violate its terms, especially in a case where there is a reasonably adequate remedy at law.

The wisdom of the agreement on the part of the Commissioners is not clear, although their good faith is not questioned. The plaintiff has never had possession of the springs and never entered upon the business. The statutes place the care, control and management of the Reservation and the springs with the defendant. The common welfare requires that the State and the Commission shall be free to administer this property from time to time as the best interest of the public requires. The court should not interfere with or hamper the administration of the property at the instance of the plaintiff which is not taking advantage of its legal remedies. Plaintiff had legal remedies which would fairly make good its loss. Under all the circumstances plaintiff is not entitled to the injunctive relief granted.

At the time the defendant repudiated the contract the plaintiff's rights were not entirely clear. This action naturally resulted from his acts.

The judgment should be reversed and a new trial granted, without costs.

All concurred, except COCHRANE and H. T. KELLOGG, JJ., dissenting.

Judgment reversed and new trial granted, without costs.