**MANUFACTURERS' LAND & IMPROVEMENT CO. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION et al.***

(Circuit Court of Appeals, Third Circuit. September 28, 1922.)

No. 2852.

1. Action ⬅35—Remedy given by statute for statutory right is exclusive.

Where a statute creates a right and provides a remedy, that remedy is exclusive.

2. Removal of causes ⬅10—Court on removal has jurisdiction only if court from which cause removed had jurisdiction.

If the state court was without jurisdiction of an action therein, the United States District Court, on removal of the action thereto, did not acquire jurisdiction, although it might, in a like suit, if originally brought therein, have had jurisdiction.

3. United States ⬅125—Suit against Emergency Fleet Corporation not suit against the government.

A suit against the Emergency Fleet Corporation is not a suit against the United States; it being a federal agency.

4. War ⬅14—Where Emergency Fleet Corporation requisitioned the fee, and not an easement in land, it could use the land for any lawful purpose.

Where Emergency Fleet Corporation, under the authority of Housing Act March 1, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146t), empowering it to requisition land or any interest therein suitable for the construction of houses for employees, requisitioned land, and not a mere easement or interest therein, it could lawfully thereafter, under the power given the President and by him delegated to the corporation, by Act April 22, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3115$^1$/$_{16}$d, 3115$^1$/$_{16}$dd), devote the land to a purpose other than that embraced in Housing Act March 1, 1918, such as constructing a trolley track loop thereon for employees' use.

**5. Statutes ⬦⟿46—Technical words need not be used to confer right to take land in fee.**

Technical or exact language need not be used in a statutory power to take and hold lands in order to give a right to take lands in fee, but any language which makes its meaning clear is sufficient.

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Action by the Manufacturers' Land & Improvement Company against the United States Shipping Board Emergency Fleet Corporation and another. Judgment for defendants, and plaintiff brings error. Affirmed.

Wescott & Weaver, of Camden, N. J., and Samuel B. Scott, of Philadelphia, Pa., for plaintiff in error.

Frederic M. P. Pearse, Asst. U. S. Atty., of Newark, N. J., and E. E. Jacobsen and Wm. Y. C. Anderson, both of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This writ of error was sued out to review a judgment of "no cause of action," entered on a verdict directed by the court, on an action in ejectment begun by the plaintiff in error in the New Jersey Supreme Court and removed by defendants to the District Court. The land in question was requisitioned and used under the authority of the Acts of Congress of March 1, 1918 (40 Stat. 438 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146t]), and April 22, 1918 (40 Stat. 535 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115$^1$/$_{16}$d, 3115$^1$/$_{16}$dd]). That act authorized the United States Shipping Board Emergency Fleet Corporation, hereinafter called the Fleet Corporation, to purchase or requisition any land suitable for the construction thereon of houses for the use of employees of shipyards and their families, to determine and make just compensation therefor, and, if the amount determined was unsatisfactory to the person entitled to receive it, to pay 75 per centum thereof. Whereupon the owner was entitled to sue the United States for such further sum as he thought would be just compensation for the property taken. The Second Act amends the Emergency Shipping Fund Act of June 15, 1917 (40 Stat. 182), by adding a new provision authorizing the President to take possession and control of any street railroad or interurban railroad and all appurtenances commonly used in connection with the operation thereof necessary for the transfer and transportation of employees of shipyards engaged in the construction of ships for the United States. The act also contained the same provision for payment and suit against the United States as did the earlier act, and gave the President authority to exercise the powers conferred by the act through the several departments of the government and through such agencies as he should determine from time to time. The power and authority vested in the

President by the act were conferred upon the Fleet Corporation by executive order dated June 18, 1918, 21 days after the requisition was issued and 13 days before it was recorded.

Some time after the executive order was issued the Fleet Corporation had a street railway track or loop constructed on the land in question, and entered into a contract with the Public Service Railway Company to run its cars upon this loop for the purpose of transporting employees to the yards of the New York Shipbuilding Company, in which ships for the United States were being constructed.

The plaintiff contends that, since the Fleet Corporation could requisition and condemn the land for one specific purpose only, the erection of houses thereon in which employees of shipyards could live, it could not thereafter, by virtue of another act of Congress, use it for the construction of a trolley track on which to carry employees of shipyards; that such use so soon after it was taken indicates that the land was originally taken for this purpose, which was not included in the Housing Act, and therefore the land was taken without authority. "As it is clear," complainant says, "that the condemnation was for the purpose or the use to which the land was actually subjected, namely, trolley use, it is the position of the plaintiff in error that the whole proceeding was a nullity, since it was the taking of land from the very beginning for a use not authorized." The real question is whether or not the Fleet Corporation could, on May 28, 1918, requisition land "suitable for the construction thereon of houses" under the Housing Act of March 1, 1918, and thereafter, under the power and authority given to the President and delegated by him to the Fleet Corporation, by the act of April 22, 1918, devote the land to a purpose other than that embraced in the Housing Act.

The Fleet Corporation filed a motion to dismiss the writ of error on the ground that the District Court was without jurisdiction because the New Jersey Supreme Court from which the cause was removed was without jurisdiction, for the reason that the United States, which may not be sued without its consent, is the real party in interest, and not the Fleet Corporation; that the United States has not given its consent to be sued in the state court, and consent is not conferred by removal. If this contention can be sustained, it is dispositive of the case, and it should therefore be considered before coming to the merits of the case.

The acts under which the land in question was requisitioned, provide, as before stated, that in case the amount of compensation determined by the Fleet Corporation was unsatisfactory to the owner, he should be paid 75 per centum, and thereafter be entitled to sue the *United States,* not the Fleet Corporation, for such further sum as would be just compensation for the property. The United States attorney in his official capacity is defending the Fleet Corporation. All of the shares of stock of the Fleet Corporation but seven, 409,993, are held by the United States Shipping Board for the United States, and the seven are held by the seven directors of the Fleet Corporation to qualify them as directors, and have never been paid for. It is evident that the United States is operating through the Fleet Corporation.

Ward v. Foulkrod (C. C. A.) 264 Fed. 627, 638. Therefore the Fleet Corporation contends that it is only a nominal defendant, and that the real defendant, though not named in the complaint, is the United States of America. Wells v. Roper, 246 U. S. 335, 38 Sup. Ct. 317, 62 L. Ed. 755. The suit being really against the United States, it cannot be sued except as provided in the act under which the land was requisitioned, in the District Court of the United States or the Court of Claims.

[1, 2] When a statute creates a right and provides a remedy, that remedy is exclusive. Wilder Manufacturing Co. v. Corn Products Co., 236 U. S. 165, 174, 175, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; United States v. Babcock, 250 U. S. 328, 331, 39 Sup. Ct. 464, 63 L. Ed. 1011. The act of March 1, 1918, created a right and provided a remedy which did not include the Supreme Court of New Jersey. Therefore it was excluded, and did not have jurisdiction if the United States is the real defendant. If the Supreme Court of New Jersey was without jurisdiction, the United States District Court did not acquire jurisdiction by removal although it might, in a like suit originally brought therein, have had jurisdiction. Courtney v. Pradt, 196 U. S. 89, 92, 25 Sup. Ct. 208, 49 L. Ed. 398; American Well Works v. Layne, 241 U. S. 257, 258, 36 Sup. Ct. 585, 60 L. Ed. 987; Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co., 258 U. S. 377, 42 Sup. Ct. 349, 66 L. Ed. ——, No. 153, October term, 1921, decided April 10, 1922.

[3] It is true that when such officer of the government as the Postmaster General in his official capacity enters into a contract for the performance of government work, the interests of the government are so directly involved as to make the United States a necessary party, and in effect the real party, although not named in the bill. Wells v. Roper, supra. But the Fleet Corporation occupies a different position. The act under which the corporation was organized was a war measure, and provided that the corporation should be dissolved at the expiration of five years from the conclusion of the European War; that the stock was not to exceed $50,000,000, and the Fleet Corporation was authorized to purchase not less than a majority of such stock. This act contemplated a corporation in which private persons might be stockholders, and which was to be formed like any business corporation under the laws of the District of Columbia, with capacity to sue and be sued. That all the stock was in fact owned by the United States Shipping Board for the United States except seven shares used to qualify persons as directors of the Fleet Corporation does not affect the legal position of the corporation. United States v. Strang et al., 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. 368. The meaning of incorporation is that the corporate entity is a person, and as such is subject to the general rules of law. If the powers delegated to the Fleet Corporation had been given to a single individual, he would not be less liable to be called upon to defend himself in courts than other grantees of power of eminent domain. An instrumentality of government he might be, but because he is agent, and not the sovereign, he is answerable for his acts. If a tort be committed by an agent whose principal is above

the law, because sovereign, and therefore exempt from judicial process, it would be subversive of the best established principles to say that the law could not afford the same remedies against the agent employed in doing the wrong which it would afford against him could his principal be joined with him. The immunity of the principal is not communicated to the agent. Osborn v. United States Bank, 22 U. S. (9 Wheat.) 738, 842, 6 L. Ed. 204; United States v. Lee, 106 U. S. 196, 213, 221, 1 Sup. Ct. 240, 27 L. Ed. 171. The general rule is that any person within the jurisdiction is amenable to law. His only shield for harmful conduct is a constitutional rule of law exonerating him. The legal status of the Fleet Corporation relative to immunity from judicial process because of its practical identity with the government has been directly passed upon by the Supreme Court, which held that, like any other person, it could be sued. Sloan Shipyards Corporation et al. v. United States Shipping Board Emergency Fleet Corporation et al., 258 U. S. ——, 42 Sup. Ct. 386, 66 L. Ed. —— (No. 308 October term, 1921, decided May 1, 1922).

[4] Having reached this conclusion it becomes necessary to consider the case upon its merits. The Housing Act of March 1, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8146t), authorized and empowered the Fleet Corporation—

"to purchase, lease, requisition, including the requisition of *the temporary use* of, or acquire by condemnation or otherwise any \* \* \* *land or any interest therein* suitable for the construction thereon of houses, for the use of employees and the families of employees of shipyards."

The act further provides that whenever the Fleet Corporation "shall acquire by requisition or condemnation such *property* or *any interest therein*, it shall determine and make just compensation therefor," with the provision for suit against the United States if the owner of the land is not satisfied with the compensation determined. This act distinguishes between the requisition or condemnation of the land itself and "any interest therein," including an easement. It will be seen that under the act the Fleet Corporation was authorized and empowered to requisition or condemn either the land itself, taking the fee absolutely and for all time, or "any interest therein," such as an easement, for "temporary use" only. The determination of this case in our opinion depends upon whether the Fleet Corporation requisitioned the land itself or only an easement in the land. Unfortunately the record in the case does not contain a copy of the requisition and so we do not know the exact language employed in it. The defendant in its answer, however, alleges that on May 28, 1919, it "requisitioned a lot of land theretofore belonging to the plaintiff," and then particularly described the land in question, and further stated that:

"Said requisition was in writing duly acknowledged, and was on July 1, 1918, recorded in Camden in Book M-4 of Miscellaneous Records, page 543, etc., in the office of the register of deeds, Camden county."

With regard to the determination of compensation it alleges:

"In the matter of the requisition of the aforesaid lot of land, this defendant on November 15, 1919, made and determined as and for just compensa-

tion for the *estate and interest* of the plaintiff so requisitioned as aforesaid the sum of $19,743.20, lawful money of the United States of America, which determination of just compensation was embodied in a written instrument duly acknowledged, which instrument was on March 3, 1920, recorded in Book M–5 of Miscellaneous Records, page 89, etc., in the office of the register of deeds of Camden county."

[5] It does appear then, according to this last allegation, that "the estate and interest" of the plaintiff, the fee of the land, was requisitioned. The complainant filed a reply, but nowhere traversed the allegation that the Fleet Corporation requisitioned the land itself, and thereafter determined just compensation for the same, including all "the estate and interest of the plaintiff" therein. That the land itself was requisitioned and not simply an easement therein is the theory upon which the case was tried below and argued in this court. In its brief the complainant says:

"This *land* was requisitioned under what is known as the Housing Law"; that "the President of the United States did not delegate this power to the Fleet Corporation until a date subsequent to the requisition of the *land*, so that at the time the *land* was requisitioned," etc.; that "the Fleet Corporation when it took the *land* in question did not intend to use it for the purposes specified in the act.'"

So that it appears without denial that the Fleet Corporation purported to requisition the fee, and not an interest only in the land. There are no sacramental words, exact or technical language, which must be used in a statutory power to take and hold lands in order to give a right to take lands in fee. Any language which makes its meaning clear is sufficient. Newton v. Perry, 163 Mass. 319, 321, 39 N. E. 1032; Washington Cemetery v. Prospect Park; etc., Co., 68 N. Y. 591. It is not claimed by anyone that the land was not suitable for the erection of houses thereon. The Fleet Corporation undertook to requisition, and did requisition, the land in accordance with the authority of the statute, and therefore took the fee, and not merely an easement therein. The land then belonged absolutely to the Fleet Corporation, and, owning the fee, it could thereafter use the land for any other purpose than the erection of houses thereon that seemed wise to it in executing the war plans and policies of the United States. If only an easement in the land had been acquired for a particular purpose, and it was subject to that single servitude, for all other purposes it was still the land of the plaintiff company. Taylor v. New York & Long Branch Railroad Co., 38 N. J. Law, 28, 31. New Jersey Zinc & Iron Co. v. Morris Canal & Banking Co., 44 N. J. Eq. 398, 15 Atl. 227, 1 L. R. A. 133. But the fee, "the estate and interest of the plaintiff," having been acquired and just compensation therefor determined, the estate and interest of the plaintiff was at an end, and the Fleet Corporation could then, under the authority and power of the act of April 22, 1918, construct a trolley track on the land and enter into a contract for its use in transporting employees of the New York shipyard, in which ships for the United States were being built, to and from that yard. It follows that the judgment of the District Court must be affirmed.