**BOEING AIR TRANSPORT, Inc., v. FARLEY, and three other cases.**

Nos. 6287–6290.

United States Court of Appeals for the District of Columbia.

Argued Dec. 11, 1934.

Decided Feb. 4, 1935.

W. J. Donovan, of Washington, D. C., for appellants.

L. C. Garnett, D. A. Pine, J. W. Fihelly, Harry LeRoy Jones, and Carl L. Ristine, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

. VAN ORSDEL, Associate Justice.

Bills in equity were filed in these cases by appellants, plaintiffs below, to which were interposed motions to dismiss. From decrees sustaining the motions and dismissing the bills these appeals were taken.

The material facts and law applicable to each case are the same; hence for the purposes of argument in the court below and in this court the record in National Air Transport, Incorporated, No. 6288, was adopted as applicable to all the cases.

It appears that the Postmaster General of the United States, acting under authority of the Air Mail Act, 43 Stat. 805 (39 USCA §§ 461–465), and the Act of April 29, 1930, 46 Stat. 259, awarded contracts to the plaintiff companies for the carrying of air mail over the various routes designated in the respective contracts.

On February 9, 1934, the Postmaster General made the following order: "Pursuant to the authority vested in me by Section 3950, Revised Statutes of the United States, Act of June 8, 1872 (39 United States Code, Section 432), and by virtue of the general powers of the Postmaster General, it is ordered that the following air-mail contracts be, and they are hereby, annulled effective midnight February 19, 1934, viz: [Naming twenty-four companies engaged in the air mail service, among whom are the plaintiffs.]"

On February 10, 1934, plaintiff, National Air Transport Company, received from the Postmaster General the following telegram:

·"You are here notified that I have entered the following order pursuant to the authority vested in me by section 3950, Revised Statutes of the United States, Act of June 8, 1872, and 39 U. S. Code, Section 432, and by virtue of the general powers of the Postmaster General it is ordered that the following air mail contracts be, and they are hereby annulled effective midnight February 19, 1934, viz, route certificates and contracts held by you and including contract air mail route Nos. 3 and 17. You are instructed to receive no mail for transportation hereafter that cannot reach its destination with the effective date of the order." A similar notice was sent to each of the plaintiff companies.

■ For the purposes of this appeal, and equally applicable to each of the plaintiffs, the facts averred in the bill of the National Air Transport Company, and well pleaded, are conceded by the motion to dismiss to be true. It is averred that on February 9, 1933, the date on which defendant issued his order annulling plaintiff's route certificates, that plaintiff was the owner of valid and existing contracts for the carriage of the United States mail; that prior to the filing of its bill of complaint plaintiff had complied with all the terms, covenants, and conditions of its contracts; and that plaintiff never entered, or proposed to enter, into any combination to prevent the making of bids for carrying the mail, or promise to give or perform any consideration whatever to induce other persons not to bid or contract for such service. It is further averred that the Postmaster General, on February 9, 1933, entered his order purporting to annul plaintiff's air mail contracts without giving the plaintiff any prior notice, and without affording the plaintiff any opportunity to appear and defend itself; that without prior notice the defendant intends and threatens to impose upon plaintiff the penalties provided in section 3950 Rev. St. U. S. (39 USCA § 432), for a period of five years, and will preclude it from bidding or contracting for the carriage of the air mail.

Plaintiff prays that defendant be enjoined from in any manner enforcing, or attempting to enforce, the order of February 9, 1934, purporting to annul plaintiff's route certificates A. M. 3 and A. M. 17, that defendant be commanded and directed to revoke so much of the order of February 9, 1934, as relates to plaintiff's certificates, and "that defendant Farley be enjoined and restrained from imposing or attempting to impose any penalty upon plaintiff by reason of said purported order." There is a prayer for damages, and also a prayer for general relief.

The motion to dismiss stated as reasons, the failure to state a good cause of action; that the suit is against the United States; that plaintiff has a plain, adequate, and complete remedy at law by suit in the Court of Claims for an alleged breach of contract; that it is sought to control the official acts of the Postmaster General, within the scope of his official duties, involving the exercise of judgment and discretion in matters over which he is lawfully given control; and for other reasons apparent on the record.

Section 3950, Rev. St. U. S., 39 USCA § 432, under which the Postmaster General attempted to annul the contracts involved in these appeals, entitled "Combinations to prevent bids," provides as follows: "No contract for carrying the mail shall be made with any person who has entered, or proposed to enter, into any combination to prevent the making of any bid for carrying the mail, or who has made any agreement, or given or performed, or promised to give or perform, any consideration whatever to induce any other person not to bid for any such contract; and if any person so offending is a contractor for carrying the mail, his contract may be annulled; and for the first offense the person so offending shall be disqualified to contract for carrying the mail for five years, and for the second offense shall be forever disqualified."

It will be observed from the bill and the prayers for relief that plaintiffs not only seek restraint of the Postmaster General from enforcing his order, but also restraint from enforcement of the statutory penalties. In other words, the theory upon which this case was brought and presented to the court involves, not only the question whether or not an administrative officer of the government may annul government contracts without notice and hearing, but the additional authority of the Postmaster General to impose upon plaintiffs statutory penalties which will prevent them from bidding or contracting for the carriage of air mail for a period of five years.

If plaintiffs were entitled to notice and a hearing before their contract rights, good will, and right to contract in the future with respect to property could lawfully be stricken down, can equity furnish relief against

the enforcement of the penalties attaching as a result of the attempted annulment of the contracts? Section 3950, supra, provides for the annulment of contracts where it is shown that the parties have conspired to prevent bids, and penalties attach as a result, not of the order of annulment, but of the violation of the terms of the statute. It follows that, if a court of equity is powerless to correct a void order of the Postmaster General to the extent of reinstating the contracts, it would, we shall presently show, be powerless to enjoin the enforcement of the penalties growing out of the order of annulment.

Plaintiffs, however, contend that it is elemental law that any attempt to deprive a person of his property without first according him notice and hearing is void, in that it violates the Fifth Amendment of the Constitution of the United States, providing that "no person shall be * * * deprived of life, liberty, or property, without due process of law." On the other hand, counsel for the government contend that notice and hearing, by the terms of the statute, are not essential to the issuance of a valid order of annulment by the Postmaster General. Section 3950, supra, does not expressly provide for notice and hearing as a condition precedent to the annulment of a mail contract; but we are of opinion that a provision for notice and hearing may, by implication, be read into the statute, for otherwise it would be clearly unconstitutional. Southern Ry. Co. v. Virginia, 290 U. S. 190, 54 S. Ct. 148, 78 L. Ed. 260.

If the contracts in question were property, and if the order depriving plaintiffs of their rights without notice or hearing is void, it amounted to the taking of their property without due process. That the contracts were property we think is clearly held in the recent case of Lynch v. United States, 292 U. S. 571, 54 S. Ct. 840, 843, 78 L. Ed. 1434, where Mr. Justice Brandeis, speaking for the court, said: "Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment. United States v. Central Pacific R. Co., 118 U. S. 235, 238, 6 S. Ct. 1038, 30 L. Ed. 173; United States v. Northern Pacific R. Co., 256 U. S. 51, 64, 67, 41 S. Ct. 439, 65 L. Ed. 825. When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals. * * * 'The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen.' Sinking-Fund Cases [Union P. R. Co. v. U. S.], 99 U. S. 700, 719, 25 L. Ed. 496."

In Ochoa v. Hernandez Y Morales, 230 U. S. 139, 33 S. Ct. 1033, 1041, 57 L. Ed. 1427, due process of law was defined as follows: "Without the guaranty of 'due process' the right of private property cannot be said to exist, in the sense in which it is known to our laws. The principle, known to the common law before Magna Charta, was embodied in that Charter (2 Coke, Inst. 45, 50), and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term 'due process of law,' all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing."

These questions, however, though important, are not decisive of the real issue here involved. We have adverted to them briefly in response, not only to the theory upon which the cases are pitched, but to the able argument of counsel as presented both in brief and at bar. We are of opinion that the vital issue here, and the one on which the case turns is, Are these suits against the United States? If so, equity is without jurisdiction to afford relief. The sovereign cannot be subjected to suit either at law or in equity without its consent expressly given. As said in the Lynch Case, supra: "'The contracts between a Nation and an individual are only binding on the conscience of the sovereign and have no pretentions to compulsive force. They confer no right of action independent of the sovereign will.' Hamilton, The Federalist, No. 81. The rule that the United States may not be sued without its consent is all-embracing. * * * For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. * * * The sov-

ereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced."

It logically follows that, if the sovereign has granted the privilege of being sued, the remedy thus afforded, and that alone, is available in suits against the government. If the action be complete and adequate at law, equity is helpless to afford relief. In the instant cases we think a complete, and adequate remedy at law is afforded by suit in the Court of Claims. The mere fact that they are brought against James A. Farley, individually, is of little concern, since "the question whether the United States is a party to a controversy is not determined by the merely nominal party on the record, but by the question of the effect of the judgment or decree which can be entered." Minnesota v. Hitchcock, 185 U. S. 373, 22 S. Ct. 650, 656, 46 L. Ed. 954.

The establishment of post offices and post roads and the handling of the mails is a function of sovereignty conferred directly by the Constitution. As said by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 417, 4 L. Ed. 579: "Take, for example, the power 'to establish post offices and post roads.' This power is executed by the single act of making the establishment. But, from this has been inferred the power and duty of carrying the mail along the post road, from one post office to another." The United States, therefore, has a property in the mails (In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092); and the government has a direct interest in protecting the property it has in the transportation of the mails.

A contract between the United States and an individual is not different in its nature from a contract between individuals, except that a contract cannot be specifically enforced against the United States. In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216; Transcontinental & Western Air Mail, Inc., v. Farley, Postmaster General, et al. (C. C. A.) 71 F.(2d) 288; Wells v. Roper, 246 U. S. 335, 38 S. Ct. 317, 62 L. Ed. 755. In Goltra v. Weeks, 271 U. S. 536, 546, 46 S. Ct. 613, 617, 70 L. Ed. 1074, the court, distinguishing the Roper Case, where the Postmaster General had annulled a mail contract, said: "To enjoin the officers' action was in effect enforcement by specific performance of a contract against the United States. It was an affirmative remedy sought against the government, which though in form merely restrictive of an officer was really mandatory against the sovereign."

This being true, the government may breach its contract the same as an individual, and, while it may not be required in equity to specifically perform its contract for a wrongful breach thereof, an adequate remedy at law has been provided by suit for damages in the Court of Claims. Indeed, this right is specifically provided for in section 8 of the recent Act of Congress, approved June 12, 1934, Public, No. 308 (c. 466), 73d Congress (39 USCA § 469f), as follows: "Any company alleging to hold a claim against the Government on account of any air-mail contract that may have heretofore been annulled, may prosecute such claim as it may have against the United States for the cancelation of such contract in the Court of Claims of the United States, provided that such suit be brought within one year from the date of the passage of this Act [June 12, 1934]."

Technically speaking, there was not an outright breach by direct cancellation of a contract in the present case, but an attempt on the part of the Postmaster General to annul the contracts through statutory authority. Assuming the order to be void, there could be no annulment as provided by statute without notice and opportunity to be heard. The effect of the order, therefore, is to breach the contract, and, if the breach of the contract operated to deprive plaintiffs of their property rights, they have an adequate and complete remedy at law. What has occurred in these cases amounts to a breach of the contracts by the Postmaster General. Whether properly or improperly breached cannot be determined in this action, but remains to be established in the appropriate action at law.

The decrees dismissing the bills in the above-entitled cases are affirmed, with costs.

HITZ, Associate Justice, concurs in the decree, but not in the opinion of the court.