## ATCHLEY et al. v. TENNESSEE VALLEY AUTHORITY.

### No. 534—Consol. Action.

District Court, N. D. Alabama, Middle Division.

Feb. 6, 1947.

Marion F. Lusk, of Guntersville, Ala., for plaintiffs.

Joseph C. Swidler, Gen. Counsel, TVA, Charles J. McCarthy, Asst. Gen. Counsel, TVA, Frederick G. Koenig, Jr., and Robert H. Marquis, all of Knoxville, Tenn., for defendant.

LYNNE, District Judge.

The complaint in this action seeks recovery for alleged destruction of crops as the result of a flood on the Tennessee River which occurred in January, 1946. The complaint contains two counts. The first count alleges that

" * * * while defendant was exercising the powers committed to it by the Congress of operating as a unified system dams, reservoirs, and other structures, works and ways for the promotion of navigation and the control of flood waters along the Tennessee River and its tributaries, this plaintiff owned valuable crops and other property on lands adjacent to or near the waters impounded by defendant above its Wheeler Dam, and below

its Guntersville Dam in Marshall County, Alabama; that between those dates defendant's agents or employees while acting within the line and scope of their employment in the operation of said unified system, negligently raised the waters in said Wheeler Reservoir until they overflowed it, and as a proximate result of said negligent conduct, plaintiff's said crops and other property were flooded, drowned, washed away, spoiled or destroyed * * *."

The second count is identical with the first except that it alleges that the action of the defendant in raising the waters of Wheeler Reservoir was willful or wanton.

The defendant has filed a motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, on the ground that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Affidavits have been filed in support of and in opposition to the motion. Plaintiffs' affidavits assert t at the defendant could have reduced the height of the flood an additional 5.4 feet by holding more water in Guntersville Reservoir and shutting down all releases from the tributary reservoirs during the flood period. Defendant's affidavits assert that it was necessary to retain the storage space in Guntersville Reservoir to guard against the possibility of an increase in the height of the flood which might have resulted from the additional rainfall which was predicted; that at the time the water was released from the tributary reservoirs it could not be foreseen that the releases would add to the crest of the flood; and that the only water released was the small amount necessary to operate the turbines. Defendant's affidavits also assert that the effect of its operation was to reduce the height of the flood by 10 feet at Chattanooga, by 5 feet immediately below Guntersville Dam and by 3.8 feet at the Whitesburg guage approximately 16 miles below the dam, as compared with the height it would have reached under natural stream flow conditions.

Plaintiffs assert that their affidavits raise issues of fact, but in the view that I take of the case it is unnecessary to decide whether the facts averred in the affidavits filed by plaintiffs and defendant can be reconciled. The affidavits have been helpful to an understanding of the situation that gave rise to the action, but it is my opinion that the complaints do not state a cause of action and that had a motion to dismiss been filed instead of a motion for summary judgment, it should have been granted.

The issue presented in this case is identical with that raised and decided in Grant v. Tennessee Valley Authority, D.C.E.D.Tenn., 1942, 49 F.Supp. 564. The plaintiffs in that case sought recovery for alleged damages to crops resulting from releases by the Tennessee Valley Authority of waters from its Chickamauga Dam. The defendant moved for summary judgment and the case was heard on the motion, affidavits and counteraffidavits. The motion for summary judgment was sustained in a well-considered opinion by Judge Darr, primarily on the ground that "* * * Congress did not intend that the defendant be liable in damages in connection with its handling and manipulating of the waters placed in its control. Any other idea would be quite contrary to public policy" [page 566 of 49 F.Supp.].

I am in complete accord with the views expressed by the court in that case.

The plaintiffs here rely, just as did the plaintiffs in the Grant case, on the provision in section 4(b) of the Tennessee Valley Authority Act, 16 U.S.C.A. § 831c(b), that the corporation "may sue and be sued in its corporate name." In support of their position, plaintiffs cite the following cases: Sloan Shipyards v. United States Fleet Corp., 1922, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762; Keifer & Keifer v. Reconstruction Finance Corp., 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Canadian Aviator, Ltd. v. United States, 1945, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901; Reconstruction Finance Corporation v. Menihan Corp., 1941, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595; Federal Housing Administration v. Burr, 1940, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724. In my

**opinion,** these cases do not sustain the plaintiffs' position. A distinction must be recognized between the procedural question of whether a government corporation is subject to suit and the substantive question of whether a given set of facts establishes its liability as a matter of substantive law. The sue-and-be-sued clause in the TVA Act does nothing but remove the procedural bar to suit against an agency of the Federal Government. It does not engender liability in a case where liability would not otherwise exist. Lynn v. United States, 5 Cir., 1940, 110 F.2d 586; cf. Posey v. Tennessee Valley Authority, 5 Cir., 1937, 93 F.2d 726.

It has long been settled law that the Federal Government, its agencies and instrumentalities, are not liable for consequential damages arising out of the construction or operation of a navigation improvement.[1] The doctrine of nonliability for consequential damages not amounting to a taking is not based upon the immunity to suit of the United States, but is a doctrine of substantive law which protects the agent as well as the principal.[2] It applies whether the alleged liability is predicated on nuisance, negligence or other tortious conduct. Transportation Co. v. Chicago, 1878, 99 U.S. 635, 25 L.Ed. 336; Keokuk & Hamilton Bridge Co. v. United States, 1922, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165; Sanguinetti v. United States, 1924, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608.

"By a long line of cases it has definitely been settled that neither the government nor its instrumentalities would have to respond in damages arising in the development and maintenance of waters for purposes of navigation and flood control, including claims for negligence. It may be noted that this position is not because of governmental immunity from suit but on the grounds of public policy" [Grant v. Tennessee Valley Authority, D.C. 49 F. Supp. 564 at page 566].

The facts of this case illustrate the soundness of the public policy that underlies this principle. The Tennessee Valley Authority is charged by statute with the duty of constructing and operating a series of dams and reservoirs primarily for navigation and flood control. The system includes a number of storage dams on the tributaries and a series of main river dams located between the mouth of the river and Knoxville. The operation of this system requires the continuing exercise of skilled engineering judgment. The main stream reservoirs are drawn down at the beginning of the flood season to the minimum level necessary for navigation. The tributary reservoirs are drawn down at the same time to what is termed the flood control operating level.[3] The main stream reservoirs have only limited storage space and when a flood develops it is necessary to control the releases from these reservoirs in such a way as to reduce the flood to the maximum possible extent, while

---

1 Jackson v. United States, 1913, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363; Bedford v. United States, 1904, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414; Sanguinetti v. United States, 1924, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608; Danforth v. United States, 1939, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Court of Marion County, W.Va., v. United States, 1918, 53 Ct.Cl. 120; Franklin v. United States, 6 Cir., 1939, 101 F.2d 459, affirmed on other grounds, 1939, 308 U.S. 516, 60 S.Ct. 170, 84 L.Ed. 439; Christman v. United States, 7 Cir., 1934, 74 F.2d 112; Ross Const. Co. v. Yearsley, 8 Cir., 1939, 103 F.2d 589, affirmed 1940, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554; Goodman v. United States, 8 Cir., 1940, 113 F.2d 914; Coleman v. United States, C.C.N.D.Ala.,1910, 181 F. 599.

2 Ross Const. Co. v. Yearsley, supra; Lynn v. United States, supra; Burnett v. Alabama Power Co., 1916, 199 Ala. 337, 74 So. 459; Chattanooga & Tenn. River Power Co. v. Lawson, 1918, 139 Tenn. 354, 201 S.W. 165.

3 The method of operation adopted by TVA has been approved by the TVA Investigating Committee (Report of the Joint Committee Investigating the Tennessee Valley Authority, S.Doc. 56, 76th Cong., 1st Sess. (1939), p. 143) and in the unpublished findings of the District Court in Tennessee Electric Power Co. v. Tennessee Valley Authority, D.C.E.D. Tenn.,1938, 21 F.Supp. 947, affirmed, 1939, 306 U.S. 118, 59 S.Ct. 366, 83 L. Ed. 543.

at the same time reserving sufficient storage capacity to control any flood that may develop. This requires the exercise of hour-to-hour judgment, based on information as to the flow in the river and predictions of future rainfall. The officials charged with responsibility for the operation of the system must decide in every case whether to attempt to secure the greatest possible reduction in the flood which has developed or to save storage space for the greater flood that may develop if the rain continues.

Congress has laid down in section 9a of the TVA Act, 16 U.S.C.A. § 831h—1, the broad policy to be followed by the corporation in the operation of its multipurpose projects, but it has wisely left to the corporation wide discretion as to the details of operation. Cf. United States v. Welch, 1946, 327 U.S. 546, 553, 66 S.Ct. 715. A review of the affidavits filed by plaintiffs shows that their real complaint is as to the manner in which that discretion has been exercised. I am convinced that Congress did not intend that discretion to be controlled by the courts. If the plaintiffs can recover damages for losses sustained by reason of the method of operation adopted by defendant it would seem to follow that they could control such operation through the injunctive process. Surely Congress could not have intended that the judgment of a court or jury as to details of operation be substituted for that of the skilled and experienced engineers to whom this duty has been delegated.

The present case comes clearly within the principle that the performance by executive officers of discretionary governmental duties entrusted to them by statute is not subject to judicial review.[4] This principle has been reiterated time and again in mandamus proceedings to compel executive action,[5] in injunction suits to prevent executive action,[6] and in actions such as that at bar for damages claimed to have resulted from executive action.[7]

The TVA flood control system is designed to afford protection not only to lands riparian to the Tennessee River and its tributaries, but also to the lower Mississippi River basin. If the plaintiffs can

---

[4] This principle has recently been reaffirmed by Congress in the Federal Tort Claims Act, Pub.L.No.601, 79th Cong., 2d Sess., Aug. 2, 1946, 28 U.S.C.A. § 921 et seq. which authorizes tort actions against the Federal Government, but expressly excludes suits based on alleged abuse of discretion. The purpose of Congress in expressly excluding such actions must have been to eliminate the possibility that its consent to suit would be construed as an intent to change the existing substantive law. TVA was exempted from the provisions of the Act at its own request on the ground that it was already subject to suit and certain of the procedural aspects of the Act would be burdensome. The Act was passed after the decision in the Grant case and it must be presumed that TVA sought and Congress granted the exemption with that case in mind.

[5] Decatur v. Paulding, 1840, 14 Pet. 497, 10 L.Ed. 559; Reeside v. Walker, 1850, 11 How. 272, 13 L.Ed. 693; Boynton v. Blaine, 1891, 139 U.S. 306, 11 S.Ct. 607, 25 L.Ed. 183; Riverside Oil Co. v. Hitchcock, 1903, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074; Work v. Rives, 1925, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561.

[6] Wells v. Roper, 1918, 246 U.S. 335, 38 S.Ct. 317, 62 L.Ed. 755; Transcontinental & Western Air v. Farley, 2 Cir., 1934, 71 F.2d 288, certiorari denied, 1934, 293 U.S. 603, 55 S.Ct. 119, 79 L.Ed. 695; Boeing Air Transport v. Farley, 1935, 64 App.D.C. 162, 75 F.2d 765, certiorari denied, sub. nom. Pacific Air Transport v. Farley, 1935, 294 U.S. 728, 55 S.Ct. 637, 79 L.Ed. 1258.

[7] Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Kendall v. Stokes, 1845, 3 How. 87, 11 L.Ed. 506, 833; Wilkes v. Dinsman, 1849, 7 How. 89, 12 L.Ed. 618; Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396, 56 A.L.R. 1239, affirmed, 1927, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395; Standard Nut Margarine Co. v. Mellon, 1934, 63 App.D.C. 339, 72 F.2d 557, certiorari denied, 1934, 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696; Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, certiorari denied, 1932, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414; Brown v. Rudolph, 1928, 58 App.D.C. 116, 25 F. 2d 540; Jones v. Kennedy, 1941, 73 App.D.C. 292, 121 F.2d 40, certiorari denied 1941, 314 U.S. 665, 62 S.Ct. 130, 86 L.Ed. 532.

maintain this action, every landowner and tenant between the storage dams on the tributaries and the mouth of the Mississippi River can maintain a similar action after every flood. In the words of the Supreme Court in Bedford v. United States, 1904, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414:

"And if the government is responsible to one ❡landowner below the works, why not to all landowners? The principle contended for seems necessarily wrong. * * * Conceding the power of the government over navigable rivers, it would make that power impossible of exercise, or would prevent its exercise by the dread of an immeasurable responsibility" [page 224 of 192 U.S., 24 S.Ct. 240, 48 L.Ed. 414].

There is no suggestion in the affidavits of any action on the part of the defendant which could properly be described as *willful or wanton.* Cf. Birmingham Ry., Light & Power Co. v. Cockrum, 1912, 179 Ala. 372, 60 So. 304. But in any event the rule establishing the immunity of an agency of the Federal Government from liability in an action of this kind cannot be defeated by an allegation of willfulness or wantonness. Such immunity has been upheld in cases in which the complaints characterized the defendant's action as: "with malicious intent," Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 632, 40 L.Ed. 780; "wrongfully and maliciously," Mellon v. Brewer, 1927, 57 App.D.C. 126, 18 F.2d 168, 169, 53 A.L.R. 1519, certiorari denied, 1927, 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409; "knowingly, negligently and unlawfully," Brown v. Rudolph, 1928, 58 App.D.C. 116, 25 F.2d 540, certiorari denied, 1928, 277 U.S. 605, 48 S.Ct. 601, 72 L.Ed. 1011; "illegally, maliciously, feloniously, and arbitrarily," Lang v. Wood, 1937, 67 App.D.C. 287, 92 F.2d 211; "wanton, malicious and unlawful," Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 137, 118 A.L.R. 1440, certiorari denied, 1938, 305 U.S. 642, 59 S.Ct. 146, 83 L.Ed. 414; "arbitrary, capricious, and malicious," Standard Nut Margarine Co. v. Mellon, 1934, 63 App.D.C. 339, 72 F.2d 557, 559, certiorari denied, 1934, 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696.

I conclude therefore that the defendant's motion for summary judgment must be sustained. Judgment will be entered for the defendant with costs.