**JOHNSTOWN COAL & COKE CO., Inc., v. WILSON.**

No. 6488.

District Court, E. D. New York.

Aug. 1, 1932.

Nichols & Snevily, of New York City, for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel, George M. Welch, Lt. Col. Judge Advocate General's Dept., Reserve, of New York City), for defendant.

GALSTON, District Judge.

This is a motion for a preliminary injunction in which plaintiff seeks to restrain

the defendant from awarding or entering into a contract with the Koontz Coal Company, Inc., for the purchase by the United States of 20,000 tons of coal.

The complaint alleges that the government of the United States, on or before April 20, 1932, advertised for bids for 20,000 tons of coal; that both plaintiff and the Koontz Coal Company submitted bids; that the latter company was the lowest of all of the bidders, having submitted a bid of $4.69 per net ton f. o. b. destination.

It is alleged that the schedule of requirements set forth that no award would be made unless the coal on analysis represented a quality lower than 70 per cent. minimum of fixed carbon "dry coal," and that the "volatile matter contained in bituminous coal is specified as low, medium or high; low volatile being up to and including 19%. * * * "

It is alleged that the coal which the Koontz Coal Company purposes to furnish will not be the kind called for by the proposed contract, in that the fixed carbon content will be below the allowable minimum, and the volatile matter will not be of low content, as defined in the invitation, instructions, and requirements; and that tests of five carloads submitted by the Koontz Coal Company as a sample showed deviations from the prescribed conditions.

It is thus said that the plaintiff, as the next lowest bidder, will suffer irreparable injury and has no adequate remedy at law; and in consequence seeks to restrain this defendant from awarding the contract.

The defendant appears specially for the purpose of asking the court to deny the motion and to set aside the order to show cause containing a temporary stay, for the reason that, although this action purports to be one against the defendant, as named in the title, nevertheless, on the face of the bill and on the face of the moving papers, the action is one in reality against the United States of America.

Wells v. Roper, 246 U. S. 335, 38 S. Ct. 317, 62 L. Ed. 755, is relied upon by the defendant. In that case it appeared that suit was brought to enjoin the Assistant Postmaster General from annulling a contract between the plaintiff and the Postmaster General acting for the United States, under the provisions of which the plaintiff was to furnish automobiles for the collection and delivery of mail in the city of Washington. The court said:

"The effect of the injunction asked for would have been to oblige the United States to accept continued performance of plaintiff's contract, and thus prevent the inauguration of the experimental service contemplated by the Act of 1914—a direct interference with one of the processes of government. The argument to the contrary assumes to treat defendant, not as an official, but as an individual who, although happening to hold public office, was threatening to perpetrate an unlawful act outside of its functions. But the averments of the bill make it clear that defendant was without personal interest and was acting solely in his official capacity and within the scope of his duties. Indeed, it was only because of his official authority that plaintiff's interests were at all endangered by what he proposed to do.

"That the interests of the government are so directly involved as to make the United States a necessary party and therefore to be considered as in effect a party, although not named in the bill, is entirely plain. And the case does not fall within any of the exceptions to the general rule that the United States may not be sued without its consent, nor its executive agents subjected to the control of the courts respecting the performance of their official duties."

The case at bar falls squarely within the facts of that case, and the same principle of law is applicable. Obviously, the plaintiff seeks not to prevent the defendant from entering into a contract or making an award, but by indirection to prevent the United States government from so doing. It is difficult to see, for example, how this plaintiff would be benefited in any degree by having this particular defendant restrained. Were such an injunction to issue, it certainly would not restrain the United States government from entering into the contract through any other officer in its service. The subterfuge is apparent. The United States government is a necessary party to this action to protect its rights, and it may not be sued without its consent.

The plaintiff seeks to distinguish Wells v. Roper, and cites Houston v. Ormes, 252 U. S. 469, 40 S. Ct. 369, 370, 64 L. Ed. 667. That was a suit brought against Treasury officials to establish an equitable lien for attorney's fees on a fund in the United States Treasury appropriated by Congress for payment to one Susan Sanders. Such payment was to be in satisfaction of a finding of the Court of Claims. The court held that such an action was not an action against the United States, since the suit was one to compel

the performance of a ministerial duty in which the party complainant had a particular interest. The court said: "It is settled that in such a case a suit brought by the person entitled to the performance of the duty against the official charged with its performance is not a suit against the government. So it has been declared by this court in many cases relating to state officers. Board of Liquidation v. McComb, 92 U. S. 531, 541, 23 L. Ed. 623, 628; Louisiana v. Jumel, 107 U. S. 711, 727, 27 L. Ed. 448, 453, 2 S. Ct. 128; Ex parte Ayers, 123 U. S. 443, 506, 31 L. Ed. 216, 230, 8 S. Ct. 164."

Mr. Justice Pitney who wrote the opinion in Houston v. Ormes distinguished Wells v. Roper by stating that in the latter case it appeared that the official duty sought to be subjected to control was not ministerial, but required the exercise of official discretion.

Certainly, however, Wilson was not acting as a ministerial officer. Paragraph 11 of the Standard Government Instructions to Bidders shows clearly that the acts to be performed prior to award by the government or its representatives were executive and not ministerial. The section reads as follows: "11. Award or Rejection of Bids.—The award will be made with reasonable promptness and by written notice to that responsible bidder whose bid, complying with the Standard Purchase Conditions for Coal and the requirements of the Schedules, will be most advantageous to the Government, price and other factors considered. In determining price, consideration will be given to transportation costs, including land-grant freight allowances, if any. Consideration will also be given to quality of coal as indicated by records in the possession of the Government and to results obtained with the same or similar coals which indicate whether the coal possesses physical or chemical characteristics that would make it a satisfactory or unsatisfactory fuel. The Government, however, reserves the right to reject any and all bids and to waive any informality in bids received whenever such rejection or waiver is in the interest of the Government. It also reserves the right to reject the bid of a bidder who has previously failed to perform properly or complete on time contracts of a similar nature, or a bid of a bidder who is not in position to perform the contract."

In considering Wells v. Roper, Mr. Justice Taft, in Goltra v. Weeks, 271 U. S. 536, at page 546, 46 S. Ct. 613, 616, 70 L. Ed. 1074, said: "The suit was a bill in equity to enjoin the Postmaster General from annulling the contract and interfering between the United States and the plaintiff in the performance and execution of the contract. The bill was dismissed on the ground that it was a suit against the United States. That which the bill sought to restrain was not a trespass upon the property of the plaintiff. The automobiles of the plaintiff were not to be taken away from him by the government officer. What the officer was doing was merely exercising the authority intrusted to him by law for the benefit of the government in annulling a contract which involved no change of possession or title to property. To enjoin the officers' action was in effect enforcement by specific performance of a contract against the United States. It was an affirmative remedy sought against the government, which though in form merely restrictive of an officer, was really mandatory against the sovereign. The difference between an injunction against the illegal seizure of property lawfully possessed and against the cancellation of a contract which involved no change of possession is manifest."

Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 445, 40 L. Ed. 599, is also in point. This interesting observation was made in that case: "But the exemption of the United States from judicial process does not protect their officers and agents, civil or military, in time of peace, from being personally liable to an action of tort by a private person whose rights of property they have wrongfully invaded or injured, even by authority of the United States. Little v. Barreme, 6 U. S. (2 Cranch), 170 [2 L. Ed. 243]; Bates v. Clark, 95 U. S. 204 [24 L. Ed. 471]."

The proposed award by the United States government of this contract to Koontz Coal Company does not fall within the exemption thus noted.

There certainly is not enough shown in the complaint and motion papers to justify the granting of an injunction pendente lite.

Accordingly, the motion is denied and the order to show cause vacated.

Settle order on notice.