**VAN DEMAN et al.**

v.

**UNITED STATES et al.**

Civ. No. 840.

United States District Court
N. D. Indiana,
South Bend Division.

Jan. 12, 1948.

**600**

George N. Craig, Brazil, Ind., Isadore E. Levine, La Porte, Ind., Ralph B. Gregg, Indianapolis, Ind., for plaintiffs.

Levin & Levin, Lorain, Ohio, and Orville W. Nichols, Knox, Ind., James E. Keating, Asst. U. S. Atty., South Bend, Ind., for defendants.

SWYGERT, District Judge.

This is a suit by the plaintiff, for himself and other veterans of World War II similarly situated, to have the court declare void a sale of certain public property to the defendant Knox Homes, Inc., and to enjoin the defendants from consummating the sale.

The property involved consists of 139 housing units known as Park View Heights in the town of Knox, Indiana. These houses were constructed by the Government under the provisions of the so-called Lanham Act, 42 U.S.C.A. § 1521 et seq. Pursuant to the authority given under § 4 of the Act the Public Housing Administration has negotiated a sale of these properties to Knox Homes, Inc.

The plaintiffs say that the contract was not properly negotiated and that as veterans they have a preference in the purchase of these houses because of the provisions of the Surplus Property Act of 1944, 50 U.S.C.A.Appendix, § 1611 et seq., particularly 50 U.S.C.A.Appendix, § 1632f(1).

The motion to dismiss filed by the United States Attorney presents a question of the jurisdiction of the court over the defendants, United States of America, Public Housing Administration, and Orville R. Omstead, Director of Region III of the Public Housing Administration.

It is axiomatic that the United States is immune from legal action unless it consents to be sued. U. S. v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058. Accordingly, the first question to be resolved relates to the Government's consent, if any, to be sued in matters arising out of the administration of defense housing constructed under the provisions of the Lanham Act. Specifically, the question goes to whether the Public Housing Administration is an agency and instrumentality of the United States Government which may be sued as the present successor to the Federal Works Agency in the supervision, administration and disposal of government property acquired under this Act.

The plaintiffs have sued the Federal Public Housing Administration. It is assumed that they refer to the Public Housing Administration, because that is the administrative unit which now carries out the functions of the Federal Works Agency, which governmental unit was originally charged with supervising the creation of certain housing projects adjacent to defense-plant areas and with carrying out the other provisions of the Lanham Act.

The Lanham Act was passed on October 14, 1940. At the time of its enactment the administrative functions, duties, and powers imposed by the Act were charged to the Federal Works Administrator, who was the executive head of the Federal Works Agency. The Federal Works Agency was created by Executive Order, Reorganization Plan No. 1, effective July 1, 1939, 4 F.R. 2727, 53 Stat. 1423, Title 5 U.S.C.A. § 133t note. Part 3 of that order transferred to the Federal Works Agency the powers, functions and duties of several governmental agencies and instrumentalities, including the

United States Housing Authority. This latter Authority, a wholly-owned government corporation, was created by an act of Sept. 1, 1937, c. 896, 50 Stat. 888, Title 42 U.S.C.A. § 1401 et seq. Under the provisions of § 5(b) of that Act, Title 42 U.S.C.A. § 1405(b), the United States Housing Authority could sue and be sued.

Pursuant to Title I of the First War Powers Act of 1941, Public Law 354, 77th Congress, 50 U.S.C.A.Appendix, § 601 et seq., the President of the United States by Executive Order No. 9070, 50 U.S. C.A.Appendix, § 601 note, on February 24, 1942, created the National Housing Agency. This order transferred the supervision of the United States Housing Authority from the Federal Works Agency to the Federal Public Housing Authority, one of three component parts of the National Housing Agency. This order also provided that all functions, powers and duties of the Federal Works Agency relating to defense housing under the Lanham Act were to be transferred to the National Housing Agency and be administered by the Federal Public Housing Authority.

█ On July 27, 1947, a Presidential Executive Order known as Reorganization Plan 3 of 1947, 5 U.S.C.A. § 133y–16 note, and made pursuant to the Reorganization Act of 1945, 5 U.S.C.A. §§ 133y to 133y–16, became effective. This order created the Housing and Home Finance Agency and within this overall agency are three constituent agencies, one of which is the Public Housing Administration. By § 4 of Plan 3, the Commissioner of the Public Housing Administration has been delegated the following functions:

(a) To administer the duties of the Administrator of the United States Housing Authority, which government-owned corporation is hereafter to be known as the Public Housing Administration.

(b) To administer the duties previously assigned to the National Housing Agency with respect to nonfarm housing projects and certain other properties. (The project at Knox comes within this subsection.)

(c) To liquidate and dissolve the Defense Homes Corporation.

Thus it appears that these three functions of the Commissioner of the Public Housing Administration are separate and distinct, and the fact that the duties under heading (a) relate to a government-owned corporation which may sue and be sued does not affect the capacity of the agency to be sued in connection with other functions and duties relating to the Lanham Act under heading (b). The United States Housing Authority, as such, has never had any connection with housing projects constructed under the Lanham Act, although the functions, duties, and powers relating to the United States Housing Authority and to the administration of the Lanham Act have been coexistent in first the Federal Works Agency, then the Federal Public Housing Authority, and now in the Public Housing Administration.

Furthermore, Congress has not waived the sovereign immunity from suit with reference to its agents, the Federal Works Agency, the National Housing Agency and its component part, the Federal Public Housing Authority, or the Housing and Home Finance Agency and its component part, the Public Housing Administration, except as their functions, duties, and powers relate to those governmental units which Congress has specifically allowed to be sued, such as the United States Housing Authority.

Having decided that Congress has not consented that the United States government may be sued through the Public Housing Administration with reference to its functions in administering housing projects constructed under the Lanham Act, the question of jurisdiction over the Regional Director still remains.

█ The duties of the Regional Director in connection with the sale in question were not ministerial, but were executive and discretionary in charac-

ter. Under such circumstances the official cannot be sued for his official acts unless Congress has consented that he may be sued. Wells v. Roper, 246 U.S. 335, 38 S.Ct. 317, 62 L.Ed. 755; Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191. Furthermore, these duties had to do with property belonging to the government and not with personal or property rights of the plaintiffs. There is no law or regulation which requires the Regional Director of the Public Housing Administration to sell these properties to these plaintiffs.

In a somewhat similar case, Johnstown Coal & Coke Co., Inc., v. Wilson, D.C. 1932, 60 F.2d 557, a suit was brought to enjoin an Army contracting officer from awarding a coal contract to the lowest bidder. The district court said, 60 F.2d at page 558:

"* * * Obviously, the plaintiff seeks not to prevent the defendant from entering into a contract or making an award, but by indirection to prevent the United States government from so doing. It is difficult to see, for example, how this plaintiff would be benefited in any degree by having this particular defendant restrained. Were such an injunction to issue, it certainly would not restrain the United States government from entering into the contract through any other officer in its service. The subterfuge is apparent. The United States government is a necessary party to this action to protect its rights, and it may not be sued without its consent."

Furthermore, in Perkins v. Lukens Steel Company, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, the Supreme Court used language particularly apropos to the case at bar. In the Perkins case an injunction was granted a prospective bidder to restrain certain officials who were responsible for purchasing supplies for the Federal Government from abiding by a wage determination order of the Secretary of Labor pursuant to the Public Contracts Act, 41 U.S.C.A. § 35 et seq. The objectionable order required sellers of supplies to agree to pay their employees engaged in producing the goods sold to the government "not less than the minimum wage as determined by the Secretary of Labor * * *." Mr. Justice Black, speaking for the court, in part said:

"We are of opinion that no legal rights of respondents were shown to have been invaded or threatened in the complaint upon which the injunction of the Court of Appeals was based. It is by now clear that neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such. It is not enough that the Secretary of Labor is charged with an erroneous interpretation of the term "locality" as an element in her wage determination. Nor can respondents vindicate any general interest which the public may have in the construction of the Act by the Secretary and which must be left to the political process. Respondents, to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law.

* * * Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. * * * The contested action of the restrained officials did not invade private rights in a manner amounting to a tortious violation. On the contrary, respondents in effect seek through judicial action to interfere with the manner in which the Government may dispatch its own internal affairs."

For the reasons stated the motion of the United States Attorney to dismiss as to the United States of America, the Public Housing Administration and the Regional Director of the Administration is granted.

 The remaining defendant, Knox Homes, Inc., has also questioned the jurisdiction of the Court and points out that since the United States government is an indispensable party, the court cannot proceed further after granting the motion to dismiss as to the other defendants.

The government holds title to the property involved in this action. Any adjudication of the validity of the sale to Knox Homes will affect that title. It is thus evident that the government is an indispensable party.

In Shields v. Barrow, 17 How. 130, 15 L.Ed. 158, the Supreme Court defined an indispensable party as:

"* * * Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

The Court went on to hold that a case must be dismissed as to all defendants where an indispensable party is not before the court. In stating its reasons the Court quoted an earlier opinion of the court, Mallow v. Hinde, 12 Wheat. 193, 198, 6 L.Ed. 599 as follows:

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction; we put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court."

For these reasons the action is dismissed as to all defendants.