**DOLLAR et al. v. LAND et al.**
No. 9168.

United States Court of Appeals
District of Columbia.

Argued Jan. 19, 1946.

Decided March 18, 1946.

Mr. Gregory A. Harrison, of San Francisco, Cal., pro hac vice, by special leave of Court, with whom Mr. Clinton M. Hester, of Washington, D. C., was on the brief, for appellants.

Assistant Attorney General John F. Sonnett, pro hac vice, by special leave of Court, with whom Messrs. Edward M. Curran, United States Attorney, Paul D. Page, Jr., Solicitor, United States Maritime Commission, and Ellis Lyons and Harry I. Rand, Attorneys, Department of Justice, all of Washington, D. C., were on the brief, for appellees.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This action originated with a complaint filed by the present appellants in the District Court on November 6, 1945. The complaint prayed for relief by way of injunction and mandamus against the defendants, members of the United States Maritime Commission, as individuals. It was alleged that the defendants were about to sell certain stock held by them in derogation of the plaintiffs' asserted legal right to the securities.

Upon the filing of the complaint a temporary restraining order was granted against the defendants. The plaintiffs moved for a preliminary injunction, pending suit, and it was in response to this motion that the defendants, appellees here, came forward, submitting brief, affidavits and arguments embracing these defenses: (1) that the suit was in fact one against the United States without its consent, and therefore, the court was precluded from entertaining it; (2) that the complaint failed to state a cause of action because under a contractual agreement entered into in 1938 the stock in question was unconditionally and absolutely transferred to the United States. Further it was asserted that the plaintiffs because of their conduct, both at the time of contracting and subsequently, are not now free to challenge the validity of the contract.

Defendants, however, did not answer or move for a dismissal or summary judgment. The proceedings below went only to the motion for a preliminary injunction. After twice hearing the parties the District Court dismissed the complaint on its own motion and denied the temporary injunction. It appears from the briefs filed in this court that the parties, during the course of their argument on the plaintiffs' motion for a preliminary injunction, may have placed before the lower court most, if not all, of the substantive elements necessary to a decision on the merits. However, with only the aid of the record now before this court we are not free to review the case on the merits.

The controlling fact at this stage of the litigation is that the complaint was dismissed below. Some assistance in determining the basis for the dismissal is found in the order itself and in this portion of the transcript from the lower court: "I have given this case a lot of thought, and I am ready to decide it now. I appreciate Mr. Harrison's argument very much. It does not, however, change the view that I have reached in my study of it. And I may be wrong, but I think two things. One is that this transaction was legal, in the sense that the Commission had the legal right; and therefore I think it is inescapable that this is a suit against the United States and therefore that the complaint must be dismissed and the injunction dissolved." [1]

The order of dismissal indicates that the court had considered all of the offerings on both sides, and the transcript of record bears out the appellees' contention that appellants, plaintiffs below, regarded the proceeding as pointing toward a final determination on the merits. Counsel for the plaintiffs said:

"It is our belief that there is no real dispute upon the facts. It is our belief that this raises really a question of law.

"The plaintiffs are conscious of the desire for an early disposition of this cause

---

[1] Transcript of record p. 137.

and they join in that desire; and they suggest to counsel for the defendants that the parties agree that this hearing may be deemed a hearing upon the merits of the case, and that a final decree, instead of an interlocutory injunction, may be rendered at this time."[2]

Nevertheless, regardless of the light in which the parties, and perhaps the lower court, may have viewed this litigation, we are unable to say that the record on this appeal gives us license to review the complex and important substantive issues involved. We are constrained by the nature of the District Court order. The ground for the dismissal was jurisdictional, that is, the suit was deemed to be one against the United States without its consent and therefore not maintainable.

■ The complaint having been dismissed on the court's motion, the question for our decision is whether the allegations found therein, when taken as true, constitute ground for relief under any set of facts that could be proved to support the claims. This question must be answered not only by looking to the complaint itself, but also by reviewing the doctrine of sovereign immunity which appears to have controlled the decision below.

Turning to the complaint, we find these illustrative allegations:

"23. That accordingly acting under the intimidation and threat of bankruptcy and the inability to meet its obligations, including obligations to the United States itself, the company was involuntarily forced to and did enter into said contract of August 15, 1938, a full, true and correct copy of which is annexed hereto

"29. That, although such transfer was in fact and in legal effect collateral security for the indebtedness of the company to the United States Maritime Commission, nevertheless after the satisfaction of all of said debts and obligations to the United States, the defendants have asserted and claimed, and do now assert and claim that the United States is the lawful owners of the shares of stock so transferred by the plaintiffs to the United States Maritime Commission.

"30. That, the indebtedness of the company to the United States for which said shares were transferred as collateral security, amounted to approximately $7,-500,000 in principal amount, all of said amount having been fully satisfied and accordingly the indebtedness for which the stock has been transferred as collateral no longer exists.

"31. That, the contract between the plaintiffs and the United States Maritime Commission was unauthorized and prohibited by express provisions of the Merchant Marine Act of 1936, as amended.

"32. That, said contracts therefore are unenforceable, that no legal rights of either party could be effected under said contracts, that said contracts are void for all purposes and effects, and that the United States Maritime Commission could not acquire legal title to the plaintiffs' stock pursuant to the terms of the illegal agreements."

■ Considering these allegations for the moment without regard to the question of sovereign immunity, we think they state a "claim" which, if proved, entitled the plaintiffs to relief. Whether the motion to dismiss be initiated by the defendant or by the court, it can stand "only where it is clear and apparent to the court that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the specific claim."[3]

Viewing the complaint in the light of the argument before this court and the exhibits attached to the briefs presented here, the fundamental issue is drawn into sharp focus. Appellants contend that the 1938 contract represented nothing more than a pledge of the stock. This position is founded on two arguments: (1) the Commission was without authority to acquire absolute and unqualified title to the securities, and (2) the terms of the contract, and the circumstances under which it was entered into, require the court to interpret it as a security transaction. The debt originally owing the Commission has now been paid. Hence, if appellants' contention be correct the United States now has no interest in the collateral. As appellants argue, the terms of the contract seem in some respects to be more consonant with the theory of pledge than that of outright transfer. For example, it was specifically provided that appellees should acquire some 90% of the voting control of the company and have the power to sell

---

[2] Id. p. 130.

[3] Tahir Erk v. Glenn L. Martin Co., D. C., 116 F.2d 865, 870.

the securities acquired. Neither of these conditions would appear necessary if the transfer was intended to be absolute. Further, some of the language used in the Commission's press release of July 6, 1943, tends to illustrate the genuineness of the "claim" which appellants are asserting. In announcing that it was considering the "possibility of bringing about private ownership of the American President Lines" the Commission's release said: "Some of the debts of the Company were covered by debentures and preferred stock, and the Maritime Commission, *to protect its interests* and insure continuation of service, *came into possession* of 80 per cent of the common stock. Although the Commission had full voting control, it caused the Company to be operated by a Board of Directors which included representative local interests of San Francisco and former creditors of the concern." (Italics added.) It would thus appear that perhaps the "possession" acquired by the Commission to protect its "interests" was, as appellants urge, nothing more than a bargain by which there was a substitution of collateral resulting in strengthening the Commission's position by reason of the management control inextricably bound to the transferred stock. We have no finding or conclusion from the trial court on this basic issue which we believe must be tried.

The appellees point out that the complaint is inconsistent on its face, that is, the plaintiffs argue first that the contract is without authority in law and therefore void, and second that it is a valid contract and as such can only represent a pledge of the securities in question. It is true that in the final analysis these claims cannot stand together. In terms of any ultimate relief they occupy an "either or" relationship to each other, but at this point they are only alternative claims.[4] The tests of clarity and simplicity have been met.[5]

Of the many legal problems attendant upon the relationship of government to the citizenry probably none have been more perplexing or stubbornly resistant to precise solution than those arising under the doctrine of sovereign immunity. We will not here attempt an exhaustive review of the authorities, many of which were ably argued before us in the present litigation. They illustrate the great difficulty that courts have had in applying the oft-stated principle of immunity and point up the absence of any controlling formula.[6] For purposes of our decision we think it sufficient to set down: (1) an analysis of the doctrine as a preliminary or "jurisdictional" problem, and (2) an indication of the long standing policy in applying the principle to situations where the governmental undertaking is commercial and corporate in character.

As to point (1) we are adopting the jurisdictional analysis made by Justice Stephens of this Court in his opinion (dis-

---

[4] Rule 8(e) (2), F.R.C.P., 28 U.S.C.A. following section 723c.

[5] See Cohen v. Randall, 2 Cir., 137 F. 2d 441. Cf. Catanzaritti et al. v. Bianco, D.C., 25 F.Supp. 457.

[6] The line of cases relied upon by appellants stems from United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, where the federal officers were denied immunity from suit. It is true, as the appellees have urged before this court, that in the Lee case the government officers came into possession of the property in question by "force and violence", that the case was an action in ejectment and materially stronger on the question of authority in the officers to do what they did. These distinctions, however, are matters of degree. If it should be found upon the trial of the present case that the defendants acted without authority in the first instance, or have by subsequent conduct overreached their statutory authority, their position becomes the same as that of the officials in the Lee case. See also Lane v. Watts, 234 U.S. 525, 540, 34 S.Ct. 965, 58 L.Ed. 1440, and Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 620, 32 S. Ct. 340, 56 L.Ed. 570. The appellees contend that it is really the interest of the United States that the appellants seek to attack, but we think that as a prerequisite to a showing that the interest of the United States had been invaded, the government's interest must first be established. The physical fact of holding property, if bottomed on nothing more substantial than an act by an officer which may, upon trial, be found to be ultra vires, does not make out a prima facie case of government ownership, or right to claim the property. We may concede that the Maritime Commission functions only as an agency of the United States, but "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work," Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 517, 83 L.Ed. 784.

senting in part, concurring in part) in Franklin Tp. in Somerset County, N. J. v. Tugwell, 66 App.D.C. 42, 85 F.2d 208, 229. Citing several cases [7] relied upon by the parties in the present litigation, he points out: "Where a plaintiff asserts that an officer of the Government is acting without power and that therefore his acts are invalid, the court in determining the preliminary jurisdictional question whether the United States is a necessary party (whether necessary parties are before a court is, of course, jurisdictional), is confronted with a peculiar procedural problem, or impasse, arising out of the fact that the determination of this question involves passing upon the very question involved in the merits. * * * Since a court must determine at the outset its jurisdiction to proceed, it is compelled to make a preliminary decision for jurisdictional purposes on · the ultimate question in the suit, and this notwithstanding the fact that when the merits are heard, it may be compelled to reach an opposite conclusion. The courts solve this problem by accepting at their face value, for jurisdictional purposes, the assertions of the complainant of want of power in the officers—unless such assertions are 'so unsubstantial and frivolous as to afford no basis for jurisdiction * * *.'" Citing Northern Pac. R. Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897.

In Correa v. Barbour, 1 Cir., 71 F.2d 9, 12, the court, faced with this question of jurisdiction, discusses and quotes from United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, and then points out that while the "defendant *claims* that he has the right and authority * * * this is an immaterial allegation and in any event is not an assertion that he has such right and authority. *If he has such right and authority, that is a matter of defense for him to plead in the action, which, as yet, he has not done.*" (Italics added.) The

danger that citizens may be deprived of a hearing on their rights through the mere "claim" of authority on the part of a governmental officer who may have tortiously invaded private rights, seems to us to outweigh the possibility that the sovereign's immunity will be placed in jeopardy through the court's accepting jurisdiction of a cause of this sort.

While it does not alter the basic problem under consideration we observe another facet of the jurisdictional question which buttresses our conclusion to reject the defendant's claim of immunity at this time. The statute upon which the defendants rely as the fountain head of their authority for entering into the contract that is now challenged reads in part as follows: [8]

"The Commission may enter into such contracts, upon behalf of the United States, and may make such disbursements as may, in its discretion, be necessary to carry on the activities authorized by this chapter, or to protect, preserve, or improve the collateral held by the Commission to secure indebtedness, in *the same manner that a private corporation may contract* within the scope of the authority conferred by its charter." (Italics added.)

We are in agreement with the view taken of this section of the law by the court deciding Standard Oil Co. of California v. United States, 59 F.Supp. 100, involving the Maritime Commission. There the provision was treated in the same fashion as those statutes creating corporate instrumentalities for the conduct of public business. While the corporate acts characteristically carry language to the effect that the corporation may "sue and be sued," [9] we think the comparison is well drawn. It is in harmony with the views of administrative officials having occasion to consider that section of the law involved in this litigation. For example, though not deciding the extent of con-

---

[7] Payne v. Central Pac. R. Co., 255 U. S. 228, 41 S.Ct. 314, 65 L.Ed. 598; Northern Pac. Ry. Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897; Wells v. Roper, 246 U.S. 335, 38 S.Ct. 317, 62 L.Ed. 755; Lane v. Watts, 234 U.S. 525, 34 S.Ct. 965, 58 L.Ed. 1440; United States v. Lee, 106 U.S. 196, 1 S. Ct. 240, 27 L.Ed. 171; Transcontinental & Western Air v. Farley, 2 Cir., 71 F.2d 288, certiorari denied, 293 U.S. 603, 55 S.Ct. 119, 79 L.Ed. 695.

[8] Act of June 29, 1936, c. 858, Title II, § 207, 49 Stat. 1988, amended June 23, 1938, c. 600, § 2, 52 Stat. 954, 46 U.S.C. A. § 1117.

[9] See legislation creating Federal Home Loan Bank, 47 Stat. 725, 735, 12 U.S.C. A. § 1432; Tennessee Valley Authority, 48 Stat. 58, 60, 16·U.S.C.A. § 831c; Home Owners' Loan Corporation, 48 Stat. 128, 129, 12 U.S.C.A. § 1463; Federal Deposit Insurance Corporation, 48 Stat. 162, 172, 12 U.S.C.A. § 264.

tractual freedom conferred upon the Maritime Commission by Section 207 the Attorney General has stated "that section 207 was intended to confer 'all the general and implied powers of a business corporation' (H. Rept. No. 2168, 75th Cong., 3d Sess.) and that it has been construed to authorize departures from the usual rules governing the making of Government contracts when the unusual or business character of the activities involved so require (Comptroller General's Decisions, A–51647, March 27, 1941, and B–15611, January 12, 1942)." [10]

Thus the Maritime Commission seems to stand in much the same relationship to those with whom it contracts under section 207 as do the more formal corporate organizations charged with transacting the government's business. Do the benefits of freedom of action which the Commission enjoys under this section carry with them commensurate burdens of liability as in the case of an agency with formal corporate status?

■ Courts have long recognized the difference between the more customary governmental activities and those carried on by the government through the commercial device of a corporate organization.[11] Immunity from suit is of course given up when the language of the organic statute specifically waives it. The waiver of immunity is no less effective where the corporation is created by the Congress through an authorization to the President. Sloan Shipyards v. United States Fleet Corporation, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762. Further, even in the absence of explicit statutory authority a government corporation was brought into court as early as 1898. Smithsonian Institute v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L. Ed. 793.

Whether governmental immunity automatically attaches to a government corporation was considered in Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 389, 59 S.Ct. 516, 517, 83 L.Ed. 784 where the Court said: "For more than a hundred years corporations have been used as agencies for doing work of the government. Congress may create them 'as appropriate means of executing the powers of government * * *." *But this would not confer on such corporations legal immunity even if the conventional to sue-and-be-sued clause were omitted. * * * Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: has it done so?" (Italics added.)

■ Recent cases express a clear policy toward restricting the use of the immunity shield. In Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 428, 87 L.Ed. 471, the Court quotes with approval from the Sloan Shipyards case, supra, on the matter of the liability of a government corporation officer and then says, "* * * when it comes to the utilization of corporate facilities * * * in the broadening phases of federal activities in the commercial or business field, immunity from suit is not favored." Citing Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Federal Housing Administration Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724. We think it a logical and necessary continuance of this policy to apply it in the present case where the language of the statute, as well as the strongly asserted interpretation placed on it by the Commission, authorize contracts "as a private corporation."

■ Counsel for appellees has asked us to consider as a part of the record on this appeal certain affidavits which were submitted to the lower court during the argument on appellant's motion for a preliminary injunction. We do not believe that the present posture of this case is such as to warrant our accepting these affidavits. To do so would be to infringe upon the lower court's prerogative to decide the case on the merits. As we said,

---

[10] 40 Op.Atty.Gen. No. 68, March 23, 1943.

[11] In Bank of the United States v. Planters' Bank of Georgia, 9 Wheat. 904, 907, 6 L.Ed. 244, it was said: "It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted."

in Farrall v. D. C. Amateur Athletic Union, 80 U.S.App.D.C. 396, 153 F.2d 647:

"There is a great difference between discovering whether there be an issue of fact and deciding such an issue. The affidavit can be used for the former purpose but not for the latter. Thus, if a fact be averred in the complaint and contradicted in the affidavit, the latter version cannot be accepted by the court for the purposes of a motion to dismiss."

In our opinion, the affidavits, as well as much of the argument before this court, raise controversial questions of law and fact proper for presentation to a trial court.[12]

We should like to make it quite clear that in reversing and remanding this case for further proceedings in the court below we are not holding that the appellants' allegations will stand against well pleaded and proved defenses. The holding is only that the District Court erred in dismissing the complaint on jurisdictional grounds. We have not attempted to weigh conflicting factual claims or draw conclusions of law which might favor either of the parties at the hearing on the merits.

Reversed and remanded.

12 See Kohler et al. v. Jacobs et al., 5 Cir., 138 F.2d 440, 441.