**DOMESTIC & FOREIGN COMMERCE COR-PORATION v. LITTLEJOHN, War Assets Administrator and Surplus Property Administrator.**

No. 9553.

United States Court of Appeals
District of Columbia.

Argued Sept. 30, 1947.

Decided Dec. 8, 1947.

Messrs. T. Peter Ansberry and Stephen J. McMahon, Jr., both of Washington, D. C., for appellant.

Mr. Hubert H. Margolies, Atty., Department of Justice, of Washington, D. C., with whom Messrs. Edward H. Hickey, Special Assistant to the Attorney General, and George Morris Fay, United States Attorney, of Washington, D. C., were on the brief, for appellee. Messrs. J. Francis Hayden, Special Assistant to the Attorney General, and Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., entered appearances for appellee.

Before CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This action originated with a complaint for an injunction filed by the appellant in the District Court of the United States for the District of Columbia on April 29, 1947. Appellee here was named defendant in the complaint in his capacity as War Assets Administrator and Surplus Property Administrator. A temporary restraining order was issued on that date and the cause came on for hearing May 6, 1947, defendant (appellee here) having filed a motion to dismiss. On May 9, 1947, the lower court decreed that the motion for preliminary injunction be denied and granted the motion to dismiss the complaint. This appeal followed.

The facts giving rise to the complaint, briefly stated, are as follows: Appellant had purchased surplus coal from the War Assets Administration during 1946, and early in March 1947 received from the War Assets Administration an invitation to bid on 10,000 tons of coal which stated, "This coal is offered F.O.B. cars, Camp Maxey, north of Paris, Texas." On March 13 appellant answered by telegram, offering to buy the coal as offered and requested that "this tonnage be allocated to us on same terms and conditions and made a continuing part of our recent contract at same price." A letter from the War Assets Administration to appellant under date of March 19 expressed acceptance of the offer, stating in part, "Also, your terms of placing $17,-500 with the First National Bank, Dallas, Texas, *for payment upon presentation of our invoices* to said bank are accepted." (Italics supplied.) This letter requested that enclosed standard War Assets Administration forms, one being an offer to purchase and the other being a sales memorandum, be executed and returned, which request was complied with by appellant on March 28. Appellant's letter of transmittal accompanying the forms stated that $5,000 was being deposited at the Dallas bank that day and that the balance of the funds necessary to meet the invoices would be transferred to the Dallas bank when the shipment began.

War Assets Administration replied by telegram on April 1 informing appellant that the entire amount of $17,500 should be deposited in the Dallas bank prior to noon on April 4 or the sale would be cancelled. Although appellant arranged for an irrevocable letter of credit payable to War Assets Administration through the Dallas bank within the time specified, and so notified War Assets Administration, there was a further interchange of correspondence and on April 16 War Assets Administration informed appellant by telegram that the sale had been cancelled, holding appellant in default for failing to deposit immediately the full amount of $17,500 in the Dallas Bank.

Subsequently appellant learned that War Assets Administration had entered negotiations with another party for the sale of the coal involved here and filed the complaint, praying for an injunction against the sale of this coal to any person other than the plaintiff (appellant) and seeking a decree upon hearing of the cause that the sale to plaintiff is valid and in effect.

The court below was of the opinion that the complaint did not state a cause of action, after expressing openly the view that the suit was, in effect, one for specific performance involving the United States as an indispensable party, and, therefore, that the court lacked jurisdiction.

We have recently had occasion to scrutinize the doctrine of sovereign immunity as a "jurisdictional" problem,[1] and in doing so we deemed it expedient to adopt the careful analysis which had been made previously by Justice Stephens of this Court in his opinion (dissenting in part, concurring in part) in Franklin Tp. in Somerset County, N. J. v. Tugwell, 66 App.D.C. 42, 85 F.2d 208. For its obvious value in this case we repeat his finding, stated (66 App. D.C. 63; 85 F.2d 229) that:

"Where a plaintiff asserts that an officer of the Government is acting without power and that therefore his acts are invalid, the court in determining the preliminary juris-

---

[1] Dollar v. Land, 81 U.S.App.D.C. 28, 154 F.2d 307, affirmed, 330 U.S. 731, 67 S.Ct. 62.

dictional question whether the United States is a necessary party (whether necessary parties are before a court is, of course, jurisdictional), is confronted with a peculiar procedural problem, or impasse, arising out of the fact that the determination of this question involves passing upon the very question involved in the merits. * * * Since a court must determine at the outset its jurisdiction to proceed, it is compelled to make a preliminary decision for jurisdictional purposes on the ultimate question in the suit, and this notwithstanding the fact that when the merits are heard, it may be compelled to reach an opposite conclusion. The courts solve this problem by accepting at their face value, for jurisdictional purposes, the assertions of the complainant of want of power in the officers— unless such assertions are 'so unsubstantial and frivolous as to afford no basis for jurisdiction * * *,' (citing Northern Pac. Ry. Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897) and by giving the assertions thus accepted their natural jurisdictional consequences in respect of who are necessary parties."

The words just quoted have real application here. In the complaint appellant asserted that the title to the coal had passed to it (appellant) and appellee, through his agents, was presently engaged in negotiations for disposition of the coal to a party other than the appellant. The complaint was met only by a motion to dismiss supported by affidavits. It was at this stage of the contest that the lower court dismissed the complaint on the ground of lack of jurisdiction. The allegation should have been treated as admitted and therefore the motion to dismiss could be properly granted only if it were clearly apparent to the court that the plaintiff (appellant here) would not be entitled to the relief sought under any state of facts which could be proved in support of the specific claim. Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865. The summary nature of the hearing preceding dismissal precluded the careful consideration to which appellant was entitled.

All will concede at the outset that a court has no jurisdiction of a suit against the United States to which the United States has not consented. United States v. Sherwood, 312 U.S. 584, 587, 61 S.Ct. 767, 85 L.Ed. 1058. That is a ruling doctrine which has long been accepted, as the case cited demonstrates. However, since legal irresponsibility of the Federal Government is derived only by implication from the Constitution, the doctrine has received judicial delimitation which is well established. United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. Therefore, although we may observe that the War Assets Administration functions only as an agency of the United States, it must also be noted that " * * * the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." Keifer & Keifer v. R. F. C., 306 U.S. 381, 388, 59 S.Ct. 516, 83 L.Ed. 784.

Appellant, as complainant below in the suit for injunction, did not seek the court's aid to interfere in the use of official discretion by the appellee. Such discretion was exercised at the time the contract with appellant was entered into. If that contract served to vest title immediately in appellant then it follows that the ruling in Philadelphia Co. v. Stimson, 223 U.S. 6055, 32 S.Ct. 340, 56 L.Ed. 570, is controlling here. That ruling was based on a comprehensive review of the authorities, and we quote the language of Mr. Justice Hughes at pages 619 and 620 of 223 U.S., at page 344 of 32 S.Ct. (omitting citations):

"If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. * * * And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. * * * And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred."

238

Clearly, then, it was incumbent upon the lower court in determining its jurisdictional capacity to decide the ultimate question of whether or not a contract of sale had been consummated between appellant and appellee. If so, the peculiar nature of the coal involved soundly bases appellant's resort to equity for relief. The use of the word "surplus" in the description of this coal is a word of art which has an important business connotation. Such coal is obtainable only from appellee and has unique value in that it may be exported under special license outside the limitations imposed by the Government under the export allocation system. Appellant had resold this coal, and the re-purchaser had contracted to export the coal to a foreign government. Newly mined coal obtainable in the open market would not suffice the purpose of the several contracts involving this surplus coal, since it could be exported only in accordance with the export allocation system.

It is our conclusion that the District Court erred in dismissing the complaint in the belief that it lacked jurisdiction. This cause is remanded to the District Court for further proceedings in accordance with this opinion.

Reversed and remanded.