## FULTON IRON CO. v. LARSON.
### No. 9799.

United States Court of Appeals
District of Columbia Circuit.

Argued June 11, 1948.

Decided Oct. 13, 1948.
Writ of Certiorari Denied Jan. 31, 1949.
See 69 S.Ct. 489.

Mr. James R. Kirkland, of Washington, D. C., with whom Messrs. Irvin I. Goldstein and Edward J. Hayes, both of Washington, D. C., were on the brief, for appellant.

Mr. Edward H. Hickey, Sp. Asst. to the Atty. Gen., with whom Messrs. George Morris Fay, U. S. Atty., and Richard E. Guggenheim, Atty., Department of Justice, both of Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, JJ.

CLARK, J.

Appellant (plaintiff below), Fulton Iron Company, is a Delaware corporation with its principal place of business in Cleveland, Ohio. Appellee (defendant below), Jess Larson, is sued in his official capacity as War Assets Administrator and Surplus Property Administrator.

The subject matter of the present suit is a piece of real property located at Granite City, Illinois, in the St. Louis metropolitan area. This property consists of two blast furnaces, a coke plant and a by-products plant located on about 211 acres of land. This property has been designated as Plancor 438 and will be referred to as such hereinafter. Plancor 438 is and has been

a major source (if not the sole source) of supply of pig iron for the St. Louis and East St. Louis industrial areas.

Early in 1942, the Government purchased Plancor 438 from Koppers Co., Inc. (hereinafter called "Koppers"). Since that time and up to the present date, Plancor 438 has been operated by Koppers as a lessee of the Government.

On September 6, 1947, appellee set the fair value of Plancor 438 at $2,500,000.00. On September 15, 1947, appellee issued an invitation to bid for the sale by appellee of Plancor 438 and the invitation for bids set the minimum purchase price to be considered at $2,250,000.00. By October 6, 1947 (the final date set by appellee for the submitting of bids) the following three bids were filed with appellee: (1) Fulton Iron Company (appellant), $2,750,000.00; (2) Tucker Motor Corporation (hereinafter called "Tucker"), $2,751,000.00; and (3) Missouri-Illinois Furnaces, Inc. (hereinafter called "Missouri-Illinois"), $3,255,000.00.

On October 10, 1947, four days after the bids were required to be filed, appellee admittedly "without notice to appellant or to Tucker and without cause shown" arbitrarily raised the fair value from $2,500,000.00 to $3,250,000.00, almost the exact amount of the bid of Missouri-Illinois. Appellant alleges that this unauthorized increase had the net effect of rendering appellee incapable of obtaining from either appellant or Tucker under War Assets Administration Regulation 5, Part 8305.19(a),[1] the new fair value as set *after* the bids had been submitted and closed and had the further effect of disqualifying appellant as a bidder for the purchase of Plancor 438.

Missouri-Illinois, the highest bidder, is an Illinois corporation organized by Koppers and by the Hanna Coal and Ore Company (hereinafter called "Hanna"). All of the stock of Missouri-Illinois was held by Koppers and Hanna in equal shares. The directors of Missouri-Illinois with one exception, are either officers and/or directors of Koppers, or Hanna, or the M. A. Hanna Company, which owns all the stock of Hanna.

On October 17, one week after the fair value had been boosted to conform to the bid of Missouri-Illinois, which excluded from consideration the other two bids by reason of Regulation 5, Robert M. Littlejohn, predecessor in office of appellee, accepted the bid of Missouri-Illinois subject to the approval of the Department of Justice as to the anti-trust laws as required by Sec. 20 of the Surplus Property Act of 1944.[2]

The Department of Justice first took the position that the proposed transfer would violate the anti-trust laws because of the joint ownership of Missouri-Illinois by Koppers and Hanna. Having been notified of this conclusion of the Department of Justice, Hanna withdrew from any participation in the ownership of Missouri-Illinois and Koppers became the sole owner. Appellee in a letter to Koppers stated that he had no objection to this change in the ownership of Missouri-Illinois. Thereafter the Department of Justice in a letter to the General Counsel of the War Assets Administration signed by the acting Assistant Attorney General stated that: "We would not regard consummation of the proposed sale to the Missouri-Illinois Furnaces, Inc., as a wholly owned subsidiary of the Koppers Company, Inc., to be a violation of the anti-trust laws."

This letter was dated January 15, 1948. But the terms of the original bid of Missouri-Illinois, which was accepted, contained the following language: "11. If such purchase [of Plancor 438] is not completed by transfer of title to us prior to Dec. 31, 1947, there shall be refunded to us all amounts heretofore paid by us on account of the purchase price; the release by Koppers Company, Inc., of any obligations of War Assets Administration shall be ineffective; and all other rights and obligations hereunder shall be null and void." Transfer of title of Plancor 438 was not made before December 31, 1947, and has

---

[1] This regulation reads in part as follows: " * * * Disposal agencies may reject any offer which is below the fair value of the property other than an offer from a priority holder for the maximum consideration established for a transfer to such priority holder * * *."

[2] 58 Stat. 765, 775 (1944), 50 U.S.C.A. Appendix, § 1629.

not been made to this day, although it is but fair to say that the transfer has been prevented for the past several months by an injunction *pendente lite* issuing out of this court.

On January 12, 1947, appellant by letter to appellee requested that appellee consider appellant's original bid on the ground that the bid of Missouri-Illinois had failed. In this letter, appellant also offered to pay $505,000.00 in addition to its original bid of $2,750,000.00 so that the Government would receive from appellant the same amount as was bid by Missouri-Illinois, namely $3,255,000.00. This additional offer was rejected by appellee.

On February 2, 1948, appellant instituted suit against appellee in the District Court by filing a complaint, which was later amended. This complaint as amended prayed the District Court to issue a preliminary injunction against appellee restraining him from making the transfer of Plancor 438 and that this injunction be made permanent upon final hearing. The amended complaint further prayed that the District Court decree and direct: (1) that the bid of Missouri-Illinois became null and void after December 31, 1947; (2) that the change in ownership of Missouri-Illinois rendered their bid invalid because of a material change in said bid; (3) that the sale of Plancor 438 to Missouri-Illinois would be in violation of the Surplus Property Act and/or the anti-trust laws; (4) that appellee reopen the bidding; (5) that appellee negotiate with appellant for the sale to appellant at the same price and terms of payment as were set forth in the bid of Missouri-Illinois; and (6) that the bids received by appellee on October 6, 1947, be considered on the basis of the fair value existing on that date and not as "arbitrarily, unlawfully and fraudulently" fixed on October 10, 1947.

On February 5, 1948, appellee filed in the District Court a motion to dismiss this suit on the grounds that: (1) the complaint failed to state a claim upon which relief may be granted; (2) the appellant has no standing to sue; and (3) that the District Court lacked jurisdiction in that this was a suit against the United States to which the United States had not consented. By order

dated March 11, 1948, the trial judge dismissed the complaint. Appellant's motions for injunction pending appeal and for rehearing were denied below. This appeal promptly followed with appellant petitioning this court for injunctive relief pending appeal. After a hearing on this petition on May 7, 1948, we granted appellant the requested injunctive relief *pendente lite*.

The transactions involved in this case are surrounded by a pervasive and most offensive odor of skulduggery. It is perfectly manifest to anyone who takes the trouble to examine the record that the adjusting of "fair value" by the appellee could only result in insuring that the Koppers interests secured the property. While it is true that the "fair value" test was not conclusive except as to preferred bidders, nevertheless the remarkable proximity of events is significant. Appellant bid somewhat over the original "fair value" fixed by appellee with a third bidder offering a very slightly higher sum, and the Koppers crowd by a strange coincidence bid several hundred thousand dollars more than the other two bidders and by the even more singular circumstance bid a mere thousand or two dollars more than the subsequent "fair value" fixed by appellee after the bids had been submitted and without *open* notice to any of the parties.

So far the appellee and his agents had built up a very plausible case for the acceptance of the high bid of Missouri-Illinois Furnaces, Inc. (Koppers and Hanna Coal and Ore Corporation). So the Koppers, i. e., Missouri-Illinois bid was accepted. But under the law, a further step was necessary before the final acceptance could be made. It was required by law that it be submitted to the Department of Justice for determination as to whether or not the awarding of the contract to the purportedly successful bidder was a violation of the anti-trust laws. At this juncture, as stated above, the Department of Justice intervened with a declaration that by reason of the joint and equal ownership of the stock of Missouri-Illinois Furnaces, Inc., between Koppers Co., Inc., and Hanna Coal and Ore Corporation the bid was unacceptable as being in violation of the anti-trust laws. An "out", however, was

pointed out that if one or the other co-owners of Missouri-Illinois were to divest itself of its interest to the other one, the bid of the dummy corporation would be acceptable. Such an obvious hint was not to be ignored. Appellee and his agent obligingly held the matter in abeyance until they were notified that Hanna had agreed to sell all of its stock ownership in Missouri-Illinois to its old partner, Koppers.

In the meantime appellant, claiming to be the successful bidder under the Justice Department ruling (the intermediate bidder having dropped out of the controversy), asked leave to file a supplementary bid to meet the new finding of "fair value" and to match the Koppers bid. This request was denied. Appellee permitted Missouri-Illinois to retain its status as a successful bidder until the stock transfers between Hanna and Koppers had been accomplished, and in addition permitted Missouri-Illinois to modify its original bid (which contained a time limit which had been exceeded) and finally declared the Missouri-Illinois Corporation the successful bidder and was about to transfer the property to the Kopper subsidiary. This transfer was halted by a temporary injunction from this court pending hearing of the case on the merits. This hearing has now been held and we are now to pass upon the merits.

■ Unfortunately for the appellant, however, there are certain requirements which apply in equity as well as law. One of these is the requirement that a *capacity to sue* be established on the part of the plaintiff (or as here the appellant). Appellant despite the most strenuous and brilliant efforts of counsel has signally failed to make a showing of this fundamental jurisdictional fact.

■ Appellant, through its Chief Counsel, in an able and persuasive argument sought to establish this thesis: (1) that by bidding above the established minimum sum for bids to be received and above the then fixed "fair value" appellant became a qualified bidder; (2) that by withdrawal of the intermediate bidder, appellant became the *highest* qualified bidder and was entitled to the award when the Missouri-Illinois bid was temporarily held up by the Department of Justice; and (3) that appellant was entitled to sue as possessing a vested and contractual right.

This is an extremely ingenious argument but it is in our opinion entirely unsound. It is fundamentally based on the familiar principle of the law of contracts that where one accepts without qualification an offer for a contract a contract ensues as soon as the acceptance is dropped into a mail box or conveyed by any other authorized means to the offeror. This is, of course, binding on both parties. But this situation did not exist in this case. Here appellee had wide discretion under the law not only as to price but as to conditions of operation, disposal of production and various other considerations. Here the appellee did not offer terms for a contract but offered to *consider* bids subject to the minimum requirement of a certain amount. Appellee under the law had the right at all times to decline to accept any or all bids for any reason or for no reason at all.

■ Appellant in this case has only the status of a disappointed bidder, who bid as close as possible to the published minimum and was outbid by a competitor. Sympathetically as we may view the whole circumstances as affecting appellant, we are still bound to find that appellant must fail for lack of showing of any capacity to sue.

There was wide discretion vested by the Act in the Administrator in disposing of the surplus property and there were other objectives than price which must lawfully and properly be taken into consideration.

In Perkins et al. v. Lukens Steel Co. et. al., the Supreme Court said: "We are of opinion that no legal rights of respondents were shown to have been invaded or threatened in the complaint upon which the injunction of the Court of Appeals was based. * * * Respondents, to have standing in court, must show an injury or threat *to a particular right of their own, as distinguished from the public's interest in the administration of the law.*" [3] [Italics supplied.]

■ That is precisely the situation here. Since the mere submission of a bid

---

[3] 1940, 310 U.S. 113, 125, 60 S.Ct. 869, 875, 84 L.Ed. 1108.

conferred no contractual status upon appellant, it therefore comes in merely as one of the public and, by failure to show any specific, particular right that has been invaded, it falls within the doctrine of Perkins v. Lukens, as set forth above. In any event it is hornbook law that a mere member of the public cannot be heard to interfere with the processes of executive administration unless his specific, private right has been or is about to be invaded.

It is urged by appellee that the United States is an indispensable party which cannot be sued without its consent. Appellant on the other hand points particularly to the case of United States v. Lee,[4] and the cases following it, more especially to Domestic & Foreign Commerce Corp. v. Littlejohn[5] and to Dollar v. Land.[6]

It happens that the two latter cases were heard in this court by the same three judges who sat in the instant case and the opinions in both cases were written by the writer of the present opinion. Both of those cases were cases which involved appeals from the action of the District Court in entering summary judgments against plaintiffs and they were cases in which the petition alleged that certain agents of the Government were withholding property which legally belonged to plaintiff. We held in both cases that there was a disputed issue of fact which should be tried on its merits.

The Lee case, which was and is still the soundest of law, went off on the same principle and so have the cases which correctly followed it.

The case which to us seems absolutely controlling on this point is the celebrated case of United States ex rel. Goldberg v. Daniels.[7]

That was a case in which there had been survey, condemnation and appraisal of the old U. S. Cruiser Boston and the cruiser was stricken from the Naval Register by authority of law. Thereafter the Navy advertised for proposals of purchase. Goldberg bid more than the appraised amount sending a certified check for the whole sum bid. On the opening of the bids, Goldberg's bid was highest. Secretary Daniels, having in the meantime decided to accede to the request of the State of Oregon to loan the old cruiser to that State as a training vessel, refused to deliver the vessel and returned the check to Goldberg. Goldberg petitioned for mandamus to compel the Secretary of the Navy to deliver the vessel to him. Daniels in his answer admitted all the facts as stated but set up that the bid is not an acceptance of an offer but is itself only an offer, subject to be accepted or not at the discretion of the Secretary of the Navy, who never accepted Goldberg's bid, the Government meantime having decided to lend the cruiser to the State of Oregon. Goldberg demurred but this court dismissed the petition on the ground that the discretion of the Secretary was not ended by the receipt and opening of the bids even though they satisfied all the conditions prescribed. 37 App.D.C. 282, sub. nom. United States ex rel Goldberg v. Meyer.

On appeal to the Supreme Court, Mr. Justice Holmes speaking for the Court in one of those succinct opinions for which he is so justly famous said: "We see no sufficient reason for throwing doubt upon this premise for the decision, but there is another that comes earlier in point of logic. The United States is the owner, in possession of the vessel. It cannot be interfered with behind its back, and, as it cannot be made a party, this suit must fail [citing cases]."[8]

It follows that in the instant case, the judgment of the District Court must be affirmed and the temporary injunction granted by this court be dissolved.

Affirmed.

Temporary injunction of this court vacated.

[4] 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

[5] 83 U.S.App.D.C. 13, 1947, 165 F.2d 235.

[6] 1946, 81 U.S.App.D.C. 28, 154 F.2d 307, affirmed *sub nomine* Land v. Dollar, 1947, 330 U.S. 731, 67 S.Ct. 1009, 91 L. Ed. 1209.

[7] 1913, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191, affirming, 1911, 37 App.D.C. 282, *sub nom.* United States ex rel. Goldberg v. Meyer.

[8] 231 U.S. at pages 221, 222, 34 S.Ct. at page 84, 58 L.Ed. 191.