**Irvin A. EDELMAN, individually and as agent for a corporation to be organized, Lillian Sack and Joshua Edelman, Plaintiffs,**

v.

**FEDERAL HOUSING ADMINISTRATION by its Commissioner, Defendant.**

**No. 64–C–518.**

United States District Court
E. D. New York.

March 11, 1966.

Joshua Edelman, New York City, for plaintiffs.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendant; Howard L. Stevens, Bernard Rothman, Asst. U. S. Attys., of counsel.

BARTELS, District Judge.

Plaintiffs (sometimes referred to as Edelman) bring this suit against the Federal Housing Administration (FHA) pursuant to 12 U.S.C.A. § 1702, authorizing the Commissioner in carrying out the provisions of the National Housing Act "to sue and be sued". The essential facts appear from the complaint and affidavits as follows:

During February, 1964 the FHA advertised its intention to sell by public offering, Peachtree Garden Apartments (Peachtree) at Atlanta, Georgia through the medium of competitive bidding. The "Prospectus and Invitation to Bid" circulated at that time by the FHA, stated that the information therein was "all that is to be made available by the FHA" and that prospective bidders were expected "to arrive at their own conclusions" concerning the condition and valuation of the property since the FHA disclaimed any "warranty as to the accuracy of any information furnished". A letter was also sent by the FHA to prospective bidders authorizing them to visit the managing agent "to acquaint themselves with the condition of the property and to develop their own expectations as to operating expense under private ownership, rental income and all other significant factors". The prospectus indicated under the heading of "Price", that there would be "No Stated Minimum". The managing agent was Brittany Realty Company, which was owned and controlled by Walter Tally (Tally), who triggered the sale by a letter sent in May, 1963 to the FHA, offering to purchase the property for $1,400,000. Thereupon the FHA authorized its Assistant Commissioner for Property Disposition to advertise the property for sale at public auction and to accept a bid in the amount of $1,400,000 or more. This minimum was not mentioned in the prospectus.

At the public auction on March 20, 1964, at the office of the FHA in Atlanta, Georgia, Edelman bid $1,316,000, which bid was topped by Tally's bid in the amount of $1,325,000. When the bidding commenced, Edelman objected to the bidding by Tally on the ground that the latter was under contract to the FHA to rent and manage the properties, but this objection was overruled. Subsequent to the public bidding Tally acceded to the FHA's request that he raise his bid to $1,400,000, the minimum price set by the

FHA, and his bid was thereupon accepted.

■ Edelman charges, among other things, that Tally was the agent of the FHA and that Tally's resident manager Frank B. Johnson withheld important information from him as to the value and condition of the property and made false statements with respect thereto and in addition, refused him permission to inspect the property. Edelman also asserts that the FHA conspired with and aided and abetted Tally, its agent, in this deceit and fraud in order to assist Tally in acquiring the property and that moreover, it permitted Tally to increase his bid subsequent to the auction sale while not permitting other bidders to do so or even notifying them of the post-sale negotiations or of the fact that there was a minimum or knockdown price for the property. In short, Edelman claims that the FHA "stacked the cards" against him and the other bidders by reason of the foregoing, for the sole purpose of enabling the FHA's agent Tally to emerge as the purchaser. Accordingly, he sought redress from the FHA by a suit instituted in the Kings County Supreme Court, which was removed to this Court on May 18, 1964 pursuant to 28 U.S.C.A. § 1442 (a) (1). In his complaint Edelman seeks, in substance, a judgment voiding the sale to Tally and an order mandating the sale to Edelman as "the highest proper bidder", and also damages for breach of contract, breach of warranty, violation of fiduciary duty, conspiracy and misrepresentation.[1]

The FHA moves pursuant to Rule 12, Fed.Rules Civ.Proc., 28 U.S.C.A., to dismiss the complaint or, in the alternative, for summary judgment pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A., upon the grounds, among others, that (1) plaintiffs lack standing to sue; (2) the FHA cannot be sued because the action constitutes an unconsented suit against the United States; and (3) plaintiffs cannot recover money damages in this case because the suit is barred by the Federal Tort Claims Act. Other grounds are also asserted but they are impertinent to the disposition of the motion. Plaintiffs heretofore moved this Court for a preliminary injunction against the transfer of the property to Tally, but this motion was denied and the property was conveyed to Tally.

In essence, Edelman's claim is predicated upon two premises, (1) that he has a contract of purchase and sale with the FHA and is entitled to relief in connection with a breach thereof, and (2) that he has been damaged by reason of FHA's breach of warranty and misrepresentation in violation of its fiduciary obligations. Both of these premises raise the issues of plaintiffs' standing or capacity to sue and the FHA's immunity to suit.

## I

■ If Edelman's bid in conjunction with the Agency's conduct had created contractual obligations between him and the FHA, he would have been able to institute this action under the "sue and be sued" provision of 12 U.S. C.A. § 1702.[2] In spite of the fact, however, that Edelman claims in his complaint that he has a contract with the FHA, it is crystal clear from the facts that appear from the complaint and the affidavits and briefs, that he has no such contract. The Court is not bound by the conclusions of the pleader and will not permit the essential character of the suit to be disguised or distorted by the "artful drafting of a complaint".[3] Actually

---

1. From the facts alleged it is clear that there has been no breach of fiduciary duties involving any invasion of the plaintiffs' legal rights. Moreover, no cause of action exists for civil conspiracy. See Radford v. United States, 5 Cir. 1959, 264 F.2d 709. The phrase "breach of warranty" is carelessly used and may mean either breach of contract or misrepresentation, neither of which provides a basis for recovery as discussed in the opinion.

2. Krupp v. Federal Housing Administration, 1 Cir. 1961, 285 F.2d 833.

3. Colorado Insurance Group, Inc. v. United States, D.C.Colorado 1963, 216 F.Supp. 787, 791. See also, United States v. Neustadt, 1961, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614.

Edelman is in the position of an "unsuccessful bidder" and as such he has no standing to sue. This is true even though he might have been misled by the conduct of the FHA and its agent (assuming Tally to be such) and the express misrepresentation in the prospectus that there was "No Stated Minimum". While such a breach of good faith on the part of the FHA offends all standards of fair dealing, it can be remedied only by executive or legislative fiat. In mitigation, however, it should be noted that Edelman was unwilling to overbid Tally's $1,325,-000 competitive bid, which permits a persuasive inference that he would not have met the $1,400,000 minimum had it been stated in the prospectus.

 In Fulton Iron Co. v. Larson, 1948, 84 U.S.App.D.C. 39, 171 F.2d 994, cert. denied, 1949, 336 U.S. 903, 69 S.Ct. 489, 93 L.Ed. 1068, the War Assets and Surplus Property Administrator boosted the fair value designated as the minimum purchase price of a piece of real property offered for sale upon invitation to bids, without notice to the appellant and after the bids had been closed, for the purpose of conforming this figure to the bid of a favored bidder and also of disqualifying the appellant although the latter made an additional offer of a sum equal to the amount of the successful bid. The appellant attempted as a person possessing a vested and contractual right, to recover from the Administrator. In denying recovery, the Court recognized that "[t]he transactions involved in this case are surrounded by a pervasive and most offensive odor of skulduggery" (171 F.2d p. 996) but was forced to conclude that "[s]ympathetically as we may view the whole circumstances as affecting appellant, we are still bound to find that appellant must fail for lack of showing of any capacity to sue." (p. 997) The doctrine of the *Fulton* case and other similar decisions [4] is predicated upon the theory that the mere submission of a bid does not confer a contractual status on a person in Edelman's position since the FHA has a right to decline to acccept any or all bids for any reason or for no reason at all.[5] Accordingly, Edelman falls within the category of a person who is unable to demonstrate any specific, particular right of his own which has been violated as distinguished from the public's interest in the administration of law.[6]

 This requirement of a capacity to sue is neither eliminated nor diluted by the statutory authorization to the FHA to "sue and be sued". This is obvious from the principles laid down in Larson v. Domestic and Foreign Commerce Corporation, 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, where the Court, among other things, said: "It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened. * * * This is true

4. See United States v. Gray Line Water Tours of Charleston, 4 Cir. 1962, 311 F.2d 779; Wooldridge Manufacturing Company v. United States, 1956, 98 U.S.App. D.C. 286, 235 F.2d 513, cert. denied, 351 U.S. 989, 76 S.Ct. 1054, 100 L.Ed. 1502; Friend v. Lee, 1955, 95 U.S.App.D.C. 224, 221 F.2d 96; Trans International Airlines Inc. v. United States, Ct.Cl.1965, 351 F.2d 1001; Heyer Products Co., Inc. v. United States, 1956, 140 F.Supp. 409, 135 Ct.Cl. 63, and Ct.Cl.1959, 177 F.Supp. 251; Robert Hawthorne, Inc. v. United States Department of Interior, E.D.Pa. 1958, 160 F.Supp. 417. Compare, Northern States Power Co. v. Rural Electrification Administration, D.C.Minn.1965, 248 F.Supp. 616.

5. "Often tenders or bids are advertised for by public corporations, municipalities, counties or states, or private corporations. The rules governing such bidding are analogous to the rules governing auction sales. That is, an ordinary advertisement for bids or tenders is not itself an offer but the bid or tender is an offer which creates no right until accepted." 1 Williston on Contracts (Third Edition) § 31, p. 82.

6. Cf., Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. While many of the "unsuccessful bidder" cases are brought directly against the United States Government, "the FHA is about as much a part of the Government as any agency can be." United States v. McNinch, 1958, 356 U.S. 595, 598, 78 S.Ct. 950, 952, 2 L.Ed.2d 1001.

whether the conduct complained of is sovereign or individual. In a suit against an agency of the sovereign, as in any other suit, it is therefore necessary that the plaintiff claim an invasion of his recognized legal rights." (p. 693, 69 S. Ct. p. 1463) Edelman's status as an unsuccessful bidder precludes him from successfully claiming an invasion of any such legal right.[7] In attempting to evade this bar, plaintiffs equate the "bid form" submitted to the FHA with a binding and enforceable contract with the FHA, and further assert that they possessed contractual rights because they made the "highest proper bid". These arguments have been rejected in the past and are equally unavailing to the plaintiffs in this case.[8]

## II

Plaintiffs also seek redress upon the additional theory of deceit and misrepresentation. Assuming that they have the capacity to sue under this theory, they have been unable to establish that the sovereign has consented to be sued either in its own name or in the name of its agency upon this type of claim. It is true that the FHA has been authorized to "sue and be sued" under 12 U.S.C.A. § 1702. However, the Federal Tort Claims Act in 28 U.S.C.A. § 2680(h) expressly excludes from its coverage torts based upon misrepresentation, deceit or interference with contract rights. Plaintiffs attempt to overcome this hurdle by arguing that this exclusion does not refer to suits against a Federal agency, citing 28 U.S.C.A. § 2679(a),

which states that the authority of a Federal agency to sue and be sued "shall not be construed to authorize suits against such federal agency on claims which are *cognizable* under section 1346 (b)" [emphasis supplied] of the Federal Tort Claims Act. They contend that inasmuch as torts, like deceit and misrepresentation, are not so *cognizable* under the Act, they are therefore *cognizable* as far as suits against Federal agencies are concerned. In other words, they claim that the "sue and be sued" provision of 12 U.S.C.A. § 1702 affords them the right of recovery independently of the Federal Tort Claims Act. This argument has been made before without success.

Thus in Freeling v. Federal Deposit Insurance Corporation, W.D.Okl.1962, 221 F.Supp. 955, aff'd, 10 Cir.1963 (on the opinion below), 326 F.2d 971, the plaintiff brought an action for money damages against the FDIC, which is a sue and be sued Government agency like the FHA, claiming that its General Counsel had made certain slanderous statements. The Court dismissed the complaint stating that "the plaintiff cannot maintain this action directly against the Federal Deposit Insurance Corporation, even though recovery may be precluded under the Federal Tort Claims Act if the plaintiff attempted to proceed directly against the United States. The Federal Tort Claims Act is the exclusive remedy available to the plaintiff, and the 'sue and be sued' clause will not support jurisdiction." (221 F.Supp. p. 957)[9] The principles expressed in *Freeling* are applicable here.

7. Cf., Trump v. Mason, D.C.D.C.1961, 190 F.Supp. 887. While the cases have uniformly denied unsuccessful bidders the right to sue for either equitable relief or lost profits, the Court of Claims, in Heyer Products Co. v. United States, 1956, 140 F.Supp. 409, 135 Ct.Cl. 63, has suggested that recovery might be permitted for the expenses of preparing bids when the Government has acted inequitably. There it was held that when the Government invited bids "it must necessarily be implied that it promised to give fair and impartial consideration * * * [to them] * * * having in mind only the interest of the Government and not the interest of some favorite bidder." (p.

413) Such a suit appears to sound in tort rather than contract and as such it would be barred by the Federal Tort Claims Act.

8. See, Fulton Iron Co. v. Larson, supra.

9. Accord, James v. Federal Deposit Insurance Corporation, W.D.La.1964, 231 F Supp. 475; see also, B. C. Morton International Corp. v. Federal Deposit Insurance Corp., 1 Cir. 1962, 305 F.2d 692; Goddard v. District of Columbia Redevelopment Land Agency, 1961, 109 U.S.App. D.C. 304, 287 F.2d 343, cert. denied, 366 U.S. 910, 81 S.Ct. 1085, 6 L.Ed.2d 235; cf., United States v. Neustadt, supra.

Plaintiffs also advance a number of other arguments for relief which the Court finds are without merit and unnecessary to discuss.

For the foregoing reasons, the complaint must be dismissed. Settle order within ten (10) days on two (2) days' notice.